In the Matter of the Application for the Removal of CHARLES E. O'HARA, as Testamentary Trustee under the Last Will and Testament of MELANCTHON L. SEYMOUR, Deceased.

*Trustees — assent of the beneficiary to an investment — contingent remaindermen — a technical breach of trust involving no danger to the trust fund — when a trustee will not be removed.*

One Patience W. Seymour, by her will, gave to Melancthon L. Seymour a life estate in certain property, with a power of appointment as to the fee, and also made one Sage her executor and trustee. Melancthon L. Seymour, by his will, executed said power in favor of Sage, and made one O'Hara his executor and trustee. Sage, while acting as executor and trustee, invested moneys of the trust in notes, secured by mortgages upon property in Connecticut. He, after the death of Melancthon L. Seymour, turned over this identical investment to O'Hara, who continued it.

The first objection made by Sage to this investment was by the present proceeding, taken by Sage and his children, to have O'Hara removed, as trustee, because of it.

*Held*, that as Sage made the investment, and had for many years received the income, he could not now make it a ground for the removal of the trustee.

That he had a right to have the money invested in the State of New York, but should at least have requested O'Hara to change the investment before taking this proceeding in a summary way for his removal.

That the children of Sage, who took the estate in the event of the failure of their father to exercise a power of appointment given to him, were in a different position.

That as to them there had been, at most, a technical breach of trust.

That, where this is the case, the court will not remove a trustee if it appears that there is no danger that the fund will be lost.

That as O'Hara was solvent and responsible, as the investment was safe originally, and had, at the time of the application, been in great part brought into the State of New York, and as O'Hara had filed his account, asking for its judicial settlement, no case for his removal was made out.

That the provision authorizing the removal of a trustee (Code of Civil Procedure, § 2817, sub. 2), where he has "invested money in securities unauthorized by law," must be read in connection with the clause of the same section authorizing such removal, where, "by reason" of such an act, "he is unfit for the due execution of his trust."

That where such an investment does not endanger the fund or indicate a lack of honesty, capacity or fidelity in the trustee, the court will not remove him.

APPEAL by Warren B. Sage, Edward E. Sage, Warren Sage, Emily S. Sage and Adeline B. Vail, all the persons interested in a trust fund held by Charles E. O'Hara under the will of Melancthon L. Seymour, deceased, from a decree, entered in the office of the surrogate of the city and county of New York on the 17th day of June, 1891, denying an application to remove the said O'Hara as testamentary trustee under said will.

*John S. Melcher*, for the applicants, appellants.

*A. B. Tappen* and *Warren G. Brown*, for the trustee, respondent.

BARRETT, J.:

One Melanchthon L. Seymour, by his will, appointed the respondent, Mr. O'Hara, his executor and trustee. The trust estate was to be enjoyed by Mr. Warren B. Sage for life, and upon his death was to go to his, Sage's, appointees. In case of Mr. Sage's failure to appoint, the principal of the trust estate was then to go to Mr. Sage's lawful issue. Previous to Seymour's death, Mr. Sage was himself executor and trustee under the will of Patience W. Seymour, who gave this same estate to Melancthon L. Seymour for life, and upon his death to his, Melancthon's, appointees. Sage invested the estate in Connecticut in notes secured by mortgage upon Connecticut real estate, and in 1866, upon the death of Melancthon, he turned it over to Mr. O'Hara, who has held it ever since. It is now sought to remove O'Hara, in substance, because he did not reduce the Con-

necticut investment, which thus fell into his hands, into cash and then bring the cash into this State for investment in lawful securities. There are also some other charges, but none of any great moment, and they are subsidiary to the main charge.

The answer to the main charge is that O'Hara simply continued the Connecticut investment as it came to him from Sage, and that he did so with Sage's full knowledge and approval. Sage's denial of such approval is unworthy of serious consideration. He has received the income for upwards of twenty years and he knew perfectly well where it came from. And why, it may be asked, should he have objected to this investment. It was, in fact, an excellent one, and it was producing with unfailing regularity an income of from five to seven per cent upon the principal sum. It was also an investment of his own choosing, a trust legacy to O'Hara from Sage himself, as Patience Seymour's executor and trustee. For some twenty years this investment was unchanged, but in 1886 the old mortgage was paid off and a new mortgage was given upon the same property, which was then greatly improved and enhanced in value. The present security is, in fact, about twice as valuable as the original. In his answer to the petition, O'Hara further states that he was ready to invest the remainder of the trust fund not covered by the mortgage in compliance with the directions of the surrogate.

The investment was greatly to Sage's advantage, not alone because of the large income realized therefrom, but because such income was not diminished by local taxation. Clearly, Mr. Sage cannot now be heard to complain of this investment. If he has altered his mind about it, and wishes a strictly legal investment, he should, at least, have asked the trustees to make the change before proceeding in this summary way. His present position is entirely untenable, for he not only approved of this investment throughout, but, as late as the 25th of September, 1890, approved in writing of the trustee's account, based, of course, upon such investment. He has received an excellent income during all these years, and now, without a word of warning, he attacks Mr. O'Hara for retaining the investment which produced that income; an investment, too, which originated with himself, and which has been greatly strengthened since its adoption by O'Hara. It thus appears that the breach of trust has here been

purely technical. The trustee has acted in good faith, and the estate has never been in the least jeopardy. The moment complaint was made O'Hara arranged to bring into this State nearly the entire fund, reduced to cash, while the rest of it is amply secured and will follow shortly, namely, in November of next year.

The position of Mr. Sage's children upon this application is, of course, different from that of their father, but even they have made out no case for removal. They have but a contingent interest in the estate; that is, they take only in case their father fails to exercise his power of appointment. But they undoubtedly have a right to demand that the estate shall be invested in authorized securities. It does not follow, however, that, because, as against these contingent remaindermen, there has been a technical breach of trust, the trustee is necessarily to be removed. The rule is well stated by Mr. Perry in his work on Trusts (§ 276 [4th ed.]): "Nor will a trustee be removed for every violation of duty, or even breach of the trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the court. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy."

It is plain that here there has been no such misconduct as the learned author points out. There has been no lack of capacity or fidelity, and the trust has never been in jeopardy. If these contingent remaindermen had requested a change of securities, it would have been Mr. O'Hara's duty to comply with their request. Had he refused, their request could have been enforced, and, meanwhile, Mr. O'Hara would have been chargeable with all loss caused by the unauthorized investment. He might even have been removed, especially if his refusal were willful or in bad faith. But we think these applicants, under all the circumstances, owed it to the trustee to confer with him, to make their complaints and express their wishes before taking so radical a step as is involved in an application for removal. Mr. O'Hara's solvency is not questioned, nor is his character. And he states, under oath, that his financial standing and responsibility are more than sufficient to meet any demand by reason of the premises. The contingent remaindermen have not.

lost a dollar by reason of the unauthorized investment, nor is there any need of apprehension on that head. Indeed, Mr. O'Hara has not only brought the bulk of the estate into this jurisdiction, but he has filed his account and asked for a judicial settlement thereof. In fact, he has done everything which an honest and capable man could do to rectify a condition of things which he had every reason to believe was satisfactory to his *cestuis que trust* the moment he was informed that it was objected to. The petitioners have proceeded upon the theory that every investment which the court cannot sanction, or which may subject the trustee to personal liability in case of loss, necessarily draws with it the penalty of removal. In this we think they are mistaken. It is also claimed that the investment of money in securities unauthorized by law of itself calls for the removal of a trustee under subdivision 2 of section 2817 of the Code of Civil Procedure. But the language of this subdivision is: "Where, by reason of his having  *  *  *  invested money in securities unauthorized by law  *  *  *  *he is unfit for the due execution of his trust.*" We agree with Surrogate Rollins in *Estate of Morgan* (8 Civ. Pro. Rep., 158), that the last expression must be regarded as a legislative sanction of a familiar doctrine of equity jurisprudence, which is expressed by Judge Story (2 Eq. Jur., § 1289), in these words:

"It is not, indeed, every mistake or neglect of duty or inaccuracy of conduct of trustees which will induce courts of equity to adopt such a course (remove a trustee)." The acts or omissions must be such as to endanger the trust property or to show a want of honesty or of proper capacity or of reasonable fidelity.

None of these derelictions have here been established, and we think, therefore, that the learned surrogate was right in denying the application. The costs were properly charged upon the petitioners. Their application was precipitate and ill-timed. It was certainly lacking in just consideration to a trustee who seems to have served their father faithfully for a great many years. And it was probably quite unnecessary, for doubtless a simple suggestion would have sufficed to bring about the desired change of securities.

The decree of the surrogate should be affirmed, with costs.

Van Brunt, P. J., and Ingraham, J., concurred.

Decree affirmed, with costs.