1. WILLS—CONSTRUCTION—EXECUTORS—SALE OF SECURITIES.

   Where a will did not create a gift of specific property, or provide for its division, but gave to the executor all the rest, residue, and remainder of testator's estate on certain trusts, and provided that the executor, as trustee, might sell and dispose of all or any part of the estate at time of distribution, to carry out the same, the will did not preclude the executor, in its capacity as such, from selling securities belonging to the estate, in the exercise of a reasonable discretion, and investing the proceeds in statutory securities.

2. SAME.

   Where an executor, at a time when war was likely to depreciate all classes of securities, sold certain corporate stocks belonging to the estate,

and invested the proceeds in United States government bonds and bonds and mortgages, it was not chargeable with maladministration, though at a subsequent period the stocks might have been sold for a higher price.

Cross-Appeals from Surrogate's Court, Westchester County.

Judicial accounting by the New York Life Insurance & Trust Company as executor of the estate of Charles Saxer, deceased. From a surrogate's decree settling the accounts of executor, and directing that certain sold securities be replaced, or certain sums charged to the executor, such executor and the special guardian of certain infants appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, and HOOKER, JJ.

Wheeler H. Peckham (Wm. Temple Emmet, on the brief), for the executor.

J. Mayhew Wainwright, for the special guardian.

GOODRICH, P. J. These appeals involve the construction of the last will of Charles Saxer, who died in June, 1897. The testator directed the payment of his debts and funeral expenses, and gave the residue to the New York Life Insurance & Trust Company—

"In trust nevertheless, to collect, take and receive, all the rents, income, interest and profits thereof, and to pay over therefrom to my sister-in-law Sarah Healy the sum of five hundred dollars yearly during her natural life, in equal half-yearly payments, the first payment to accrue at my death, and to pay over the rest of said rents, income, interest and profits unto my daughter Irma McCaffrey in equal half-yearly payments, for and during her natural life, and at the death of my said sister-in-law and my daughter to divide and distribute my said estate, share and share alike among the children of my said daughter giving and paying over to each of such children as may have reached the age of twenty-one years one equal share thereof, and retaining the share of each of such as may be minors until he or she reaches the age of twenty-one years and until such age to devote the income of the share of each minor child to his or her maintenance, education and support, and I hereby give full power and authority to my trustee herein named to sell and dispose of all or any part of my estate real or personal at the time of such distribution to carry out the same."

The testator appointed the company executor of the will, and the general guardian of the minor children of his daughter Irma McCaffrey after her decease.

In March, 1900, the executor filed its account, and a petition praying that its account might be finally settled. The special guardian of the infant children of Mrs. McCaffrey filed objections to the account on the ground that the company was, under the will, trustee of the estate, and that during the lifetime of the testator's sister-in-law Sarah Healy and daughter Irma, viz., in April and June, 1898, it had sold, without permission of the court, 600 shares of the stock of the Louisville & Nashville Railroad Company, 300 shares of the stock of the People's Gas & Coke Company, and 10 bonds of the Kings County Elevated Railroad Company, contrary to the specific trust created by the will, at a loss upon the inventory valuation. The surrogate held that the executor had no power to sell unless it could show that the sale was necessary to carry out the purposes of the will, or that the sale was in the interest of and beneficial to the trust estate,

and that as the executor had failed to show that, it was bound to replace the stock of the Louisville & Nashville Railroad and of the People's Gas Company, and that its account must be surcharged with interest and dividends thereon, less the interest and dividends on investments of the proceeds of such sales.    The executor applied for a rehearing, upon which the surrogate directed a replacement of the stock of the Louisville & Nashville Railroad Company and People's Gas & Coke Company stock, or, in the alternative, that the executor charge itself with or pay into the estate the difference between the sum realized on the Louisville & Nashville Railroad Company stock and 95 per cent. of par and the difference between the sum realized on the People's Gas & Coke Company stock and 96 per cent. of par —prices at which the surrogate decided the executor might opportunely have sold the stock.    The amount of surcharge on these two stocks was about $30,000.    From the final decree the executor and the special guardian each appeals.

In the opinion delivered on the rehearing, the learned surrogate said:

"I will not undertake to say that the executor did not have the power to give good title to the securities in question, and I do not say that the executor could not justify a sale under certain circumstances. If there had been no intention expressed in the will of the testator in regard to the retention of these securities, all that would be required of the executor in disposing of them would have been the exercise of sound business prudence and judgment. But where there is a clear intention disclosed in the will that the securities should be retained until a certain period, at which time a sale was to take place, if the executor anticipate that period the burden is upon him to show that the sale was made in the interest of the trust estate, and was beneficial thereto. That sound business prudence and judgment were exercised in making the sale is not sufficient. See Matter of James, 146 N. Y. 79, 40 N. E. 876, 48 Am. St. Rep. 774; Bigelow v. Tilden, 52 App. Div. 390, 65 N. Y. Supp. 140. The rule laid down is not unnecessarily harsh, as is claimed by counsel for the executor, for the reason that the executor had the opportunity to apply to the court upon notice to all parties, and the order of the court would have been complete and ample protection. Not only has this executor failed to show that its action in disposing of these securities was necessary as well as beneficial to the trust estate, but it has not been shown that its conduct was such as an ordinarily prudent man would have displayed in respect of his own affairs."

Some confusion seems to exist as to the nature of this accounting. It is the accounting of the executor as such, and not its accounting as trustee.    The will authorizes the company, as trustee, to sell all real and personal estate at the time of final distribution; but this does not impair the authority and duty of the company as executor, in the ordinary execution of its trust, to sell the personal property and convert it into statutory investments.    We are thus brought to the question of the right of the executor to sell the securities at any time in its discretion.    The learned surrogate finds in the will an intention of the testator that these securities should be retained by the executor to carry out the trust.    There is no language to that effect in the will, unless it is to be found in the final sentence of the cited clause of the will.    But this clause does not indicate any intention to limit the usual powers possessed by executors, although it contains words of especial power of sale at the time of the final

distribution of the estate. The will does not create a gift of specific property, or provide for its division. The gift to the executor is of the rest, residue, and remainder of the testator's estate, and such a gift does not involve a restriction of the ordinary rights and duties of an executor. If the trust had been to divide specific property, no power of sale could have been implied. The duty of an executor is well stated in 1 Perry on Trusts (5th Ed.) § 465, where it is said:

"If no directions are given in a will as to the conversion and investment of the trust property, trustees, to be safe, should take care to invest the property in the securities pointed out by the law. It is true that a testator, during his life, may deal with his property according to his pleasure, and investments made by him are some evidence that he had confidence in that class of investments; but, in the absence of directions in a will, it is more reasonable to suppose that a testator intended that his trustees should act according to law. Consequently, in states where the investments which trustees may make are pointed out by law, the fact that the testator has invested his property in certain stocks * * * will not authorize trustees to continue such investments beyond a reasonable time for conversion, and invest in regular securities. * * * Taking all the cases together, it would appear to be a settled principle that trustees are not justified, in the absence of express or implied directions in the will, in continuing an investment permanently, made by the testator, which they would not be justified themselves in making."

This language was quoted with approval in Toronto Gen. Trusts Co. v. C., B. & Q. R. Co., 64 Hun, 1, 18 N. Y. Supp. 593, affirmed on the opinion below in 138 N. Y. 657, 34 N. E. 514. The same section was also cited and followed in Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753, affirmed without opinion in 167 N. Y. 629, 60 N. E. 1123, where, by a unanimous court (Mr. Justice Rumsey writing), it was held (page 587, 59 App. Div., and page 754, 69 N. Y. Supp.):

"When a trustee finds the estate committed to him already invested in interest-bearing securities, we are not inclined to say that it is his absolute duty at once to dispose of them, without regard to the market, or the demand for them, or the ruling price, or the probability of an advance in their value. It is sufficient to say, however, that ordinarily, if a trustee sees fit to continue such investments after he shall have had a reasonable opportunity to sell them without loss, and to invest them in those securities which by law he is authorized to hold, it must be an exceptional case which will justify him in his failure to do so, where as a result of that failure there has been a loss."

Indeed, an executor may become personally responsible for losses occasioned to the estate by failing to sell within a reasonable time other than chancery or statutory securities, so called, which come into his hands. It is said in 3 Williams on Executors (7th Am. Ed.) at page 344:

"Executors ought not, without great reason, to permit money to remain upon personal security longer than is absolutely necessary."

Mr. Perry says:

"Personal securities change from day to day, and as the death of the testator puts an end to his discretion in regard to them, unless he has expressed it in his will, the executor or trustee will become personally liable if he does not get in the money within a reasonable time. He must not allow the assets to remain out on personal security, though it was a loan or investment by the testator himself." Perry on Trusts, § 440.

The cases cited by the surrogate (Matter of James, 146 N. Y. 79, 40 N. E. 876, 48 Am. St. Rep. 774, and Bigelow v. Tilden, 52 App. Div. 3ço, 65 N. Y. Supp. 140) do not seem to be authority on the proposition enunciated by him. The James will gave to the wife, specifically, one half of the income of the estate, free from all charges, and to his legal heirs the remainder of such half after her death, and the income of the other half of the estate. The power of the executor to sell securities not specifically bequeathed was not involved. The real question was the extent of Mrs. James' estate as between herself and the remaindermen and the other heirs of Mr. James. In the Tilden Case there was a specific direction to set aside certain railroad bonds for the benefit of a particular person, and to pay over the principal of such bonds or assign them to the devisees; but the executors were authorized to sell, in their discretion, and reinvest the proceeds. The court said that the general rule as to investments of this character by executors was not important, as the testator had in the will regulated the power of the trustees; quoting the language of Judge Gray in the James Case, supra:

"It is only where the instrument fails to express or to disclose an intention that we must resort to the rules which have been established by the decisions of the courts."

I cannot find in the Saxer will any language indicating an intention of the testator to limit the power and duty of the executor as to the disposition of the stocks and bonds as soon as that could be done conveniently, or at such reasonable time as should be for the interest of the estate. The executor sold the stock and bonds the next year after the testator's death, and invested the proceeds in United States bonds and a bond and mortgage; and it was well within its power in so doing. It was its duty to sell the stocks in a reasonable time, and use the proceeds in the purchase of securities recognized by the statutes of this state. A careful reading of the evidence discloses no want of prudence or care in the sale of the stocks and bonds, and, while it does appear that they might at a period subsequent to the sale have been sold for a higher price, that does not militate against the conduct of the executor in selling at a time when war was likely to depreciate all classes of securities. As was said in one case, at least the principal was preserved for the final distribution.

The decree should be reversed, the objections of the special guardian overruled, and the accounts as presented by the executor should be approved and settled, with costs to the executor, payable out of the estate. All concur.