Matter of the Application for Revocation of the Letters Testamentary Issued to the AMERICAN SECURITY AND TRUST COMPANY upon the Will of ANDREW J. AVERY, Deceased.

(Surrogate's Court, Chautauqua County, December, 1904.)

Foreign trust company not entitled to letters testamentary — Power of foreign corporations to do business in this State, discussed — Unauthorized investments as grounds for revocation of letters testamentary.

The right to dispose of property by will, or to name executors, is not a vested right but is regulated and controlled by statute. An executor is an officer of the court subject to its control and is without right to act until letters granted.

The provisions of the Code of Civil Procedure, as to the qualifications of executors, apply wholly to natural persons. A foreign corporation, though a person under section 5 of the Statutory Construction Law, is not a " citizen " within the meaning of the United

34

States Constitution providing that citizens of each State shall be entitled to all the privileges and immunities of the citizens of the several States. Hence such foreign corporation is within the meaning of section 2612 of the Code of Civil Procedure which prohibits the granting of letters testamentary to "An alien not an inhabitant of this state."

The Banking Law, article IV, which authorizes trust companies to accept appointments as executors, administrators, etc., applies only to domestic corporations.

A foreign corporation must rest its right to do business in this State upon permission; it is not entitled to do business merely because the same is not prohibited. A prohibition to do business may arise by implication; and as it is the policy of our law not to allow trust funds to be taken beyond the jurisdiction there is an implied prohibition against a foreign corporation acting as executor.

The mere fact that the court may require a bond does not imply that a foreign corporation is entitled to letters testamentary on giving such bond.

The fact that beneficiaries under a will did not oppose the appointment of a foreign corporation as executor is no answer to an application to revoke such letters, for the defect in the appointment is jurisdictional and consent cannot give such jurisdiction.

Where a foreign corporation, acting as executor, invests the estate in securities not authorized by the laws of this State, its letters testamentary should be revoked.

ANDREW J. AVERY died a resident of the city of Dunkirk, in this county, on or about the 11th day of August, 1902, leaving a last will and testament which was admitted to probate by this court on the twenty-seventh day of September of the same year, and letters testamentary were thereupon issued to the American Security and Trust Company (hereinafter called the Trust Company), of Washington, D. C., the executor named in said will. The petitioners in this proceeding are the widow and the children of the deceased, who are his only heirs-at-law and next of kin, and upon the probate of the will they all waived the issue and service of citation, consented to the probate of the will and the issuing of letters testamentary to the Trust Company as executor. The petitioners are the sole beneficiaries under the will, except that the issue of Katie A. Avery, Elizabeth Armstrong, and Mary A. Jarvis, three of the petitioners, succeed to the interest of their parents in the event of death

prior to the period of distribution fixed in the will.    The
Trust Company is a foreign corporation, located and doing
business in the City of Washington, D. C., and was organized
under the laws of the State of Virginia in 1899, and sub-
sequently reorganized under an act of Congress relating to
the organization of such companies in the District of Co-
lumbia.    It has given no security as such executor for the
proper execution of its trust.    It has no office, or place of
business, or officers located in this State, and it has desig-
nated no person upon whom process may be served; it has
never procured, from any department of the State, authority
to do or transact business in this State, and has not deposited
with, or given to, any officer or department of this State any
security for or as a condition of its right to do business here.
In short, it has not complied with any of our laws respect-
ing foreign corporations and their right to do business in
this State.    At the time of the death of the testator he was
possessed of personal property of the value of upward of
$345,000 and his homestead in the city of Dunkirk, in this
county.    The homestead property was all the real estate of
which he died seized.    Upon its appointment the Trust Com-
pany removed all the assets of the estate, excepting house-
hold furniture and personal effects (the use of which was
given to the widow), from the residence of the testator in
this State to its place of business in the city of Washing-
ton, D. C., where they have ever since remained.    The as-
sets removed consisted of all moneys on deposit in this State,
amounting to something over $77,000, and all the stocks,
bonds, and other securities belonging to the estate, of the
value of upward of $265,000; while the assets left in this
State were of the value of only about $2,800.

By this application the petitioners seek a revocation of the
letters testamentary, issued to the Trust Company, as exec-
utor, and its removal from the further control and manage-
ment of the estate.    Further facts appear in the opinion.

Moot, Sprague, Brownell & Marcy, for petitioners.

Warner & Farnham, for executor.

Surrogate's Court, Chautauqua County, December, 1904. [Vol. 45.

WOODBURY, S. The grounds upon which the revocation of letters is sought are, that at the time such letters were issued the Trust Company was disqualified from accepting the appointment as executor under the will of the deceased, or from acting as such executor, and that the court was without authority to issue such letters to it, and that the objection was not taken upon the hearing of the application for the issuing of such letters by the petitioners, or any of them, or any one representing them, and that said Trust Company is now disqualified by law from exercising the powers of executor over the estate of the deceased; and second, that it has invested the funds of the estate in securities unauthorized by law.

The right of an individual to make a will disposing of his property is not a vested property right but rests upon statutory enactment, and is subject to such limitations and restrictions as respects the substance, form and beneficiaries, as the law imposes. It is equally true that administration and transmission of estates of deceased persons are regulated and controlled by statute. The right to appoint an executor or trustee by will to carry its provisions into effect is in no sense a vested right, but is restricted and regulated by statute, as is the action of the court in issuing letters conferring authority upon the person so appointed to act.

It is said that an executor derives his appointment and powers, and his title to the estate, from the will. People ex rel. Gould v. Barker, 150 N. Y. 52, 57; Hartnett v. Wandell, 60 id. 346.

That these expressions are general and are not intended as defining the legal effect of the instrument itself is manifest upon a moment's reflection, for if the concurrence of the fact of the execution of the will and the death of the testator effectuates the appointment of an executor, vests him with the title to the estate, and clothes him with power to execute its provisions, no further act would be required on the part of the court to enable him to proceed with the administration and disposition of the estate according to its terms. He derives no such authority, however, from the will itself. He can exercise none of the functions of his office or the powers

conferred by the will prior to its probate and the issuing
of letters, except to preserve the estate and pay the burial
expenses of his testator.   He has no such title as enables
him to dispose of the property, except to pay the burial ex-
penses.   Here the law steps in and subjects the estate and
the executor to the jurisdiction, supervision and control of
the court.   When the court has acted upon the probate of the
will — admitted it to probate — and when the executor has
qualified as required by law and letters have been issued
to him out of and under the seal of the court, then and not
till then can he be said to be the executor of the will with
power to execute its provisions: but even then his power to
carry out its provisions is subject to the limitation that such
provisions must not be contrary to the laws of the State, or
against its public policy.

Whether the action of the court in issuing letters to an
executor is to be deemed an appointment, or be described by
the use of some other term, is of but little consequence.   The
fact remains that it requires the concurrent action of the
court and that of the testator to create an executor and con-
fer upon him power to execute the provisions of the will.
Upon the issuing of letters to an executor he becomes an officer
of the court for the purpose of executing a trust, with power
reserved in the court to direct and control his conduct, settle
his account, etc.   Code, § 2472.   He takes an administra-
tive title to the estate — the legal title for the purpose of
administration and to enable him to pay the debts of his
testator and pass the property forward to the beneficiaries
under the will at the proper time.   Steinway v. Steinway,
163 N. Y. 183, 200; Lane v. Albertson, 78 App. Div. 607,
614; Lediger v. Canfield, id. 596–598; Morchauser v. Pierce,
64 id. 558, 560.   He holds such title not in his own right
but as trustee for the benefit of creditors and the beneficiaries
under the will.   Blood v. Kane, 130 N. Y. 514, 517; Ledyard
v. Bull, 119 id. 62, 72.   Inasmuch as the residence and
domicile of the testator at the time of his death was in this
State and all of the real estate of which he died seized
actually situate here, and all the personal property which he
possessed was, at least in contemplation of law, at the place

Surrogate's Court, Chautauqua County, December, 1904. [Vol. 45.

of his domicile, the validity and legal effect of the will and of its various provisions and its interpretation, are governed and controlled solely by the laws of this State, and this applies as well to the appointment of an executor as to any other of its provisions, because it is just as much a part of it. The fact that a foreign executor is named can in no sense change this doctrine, because as was said in the case of Yonley v. Lavender, 21 Wall. 276, 279, " The several states of the Union necessarily have full control over the estates of deceased persons within their respective limits."

Allusion has already been made to the fact that a testator in his appointment of an executor is circumscribed in his selection by such limitations as are imposed by statute. To this we should add that he is also limited in his selection to persons and corporations whose appointment does not contravene the public policy of the State, for whatever is against public policy is against the law and must be treated as though prohibited.

This brings us to the first important question in this proceeding, whether there was authority in law for the appointment of this Trust Company, a foreign corporation doing business in the District of Columbia, to the office of executor within this State. If there was not, then the action of the court in granting letters was without jurisdiction, and it is our duty to revoke the same. This question naturally subdivides itself under two heads. 1. Was the Trust Company, by its charter and the laws of its own domicile, authorized to accept and execute such trust in this State? and 2. Do the laws of this State permit it to come here and execute such a trust and authorize this court to issue letters unto it? In the view which we take of the question it is unimportant whether by its charter and the laws of its domicile, the Trust Company has authority to accept and execute such a trust here, and I shall, therefore, assume for the purpose of disposing of this case that it possessed such authority.

Section 2685 of the Code of Civil Procedure provides for the revocation of letters issued to an executor or administrator: " Where the executor or administrator was, when letters were issued to him, or has since become, incompetent,

or disqualified by law to act as such; and the grounds of the objection did not exist, or the objection was not taken by the petitioner, or a person whom he represents, upon the hearing for the application for letters.".

The Legislature undoubtedly has a right to determine who may and who may not be appointed, or accept and execute the office of executor, in this State. In doing this the State does not interfere with the testator's right to dispose of his property; it simply limits the agency through which it is to be distributed under the supervision and direction of the court.

The general provisions of the statute governing the qualifications of executors, or perhaps more strictly speaking the incompetency of persons to serve as such, are found in section 2612 of the Code of Civil Procedure, which provides that "No person is competent to serve as an executor who, at the time the will is proved, is: 1, Incapable in law of making a contract; 2, Under the age of twenty-one years; 3, An alien not an inhabitant of this state; or 4, Who shall have been convicted of an infamous crime;" etc.

It will be noted that the language of this statute does not expressly prohibit the appointment of such persons as executors, or the court from granting letters unto them; but it cannot be doubted that it was so intended by the Legislature, and it is a well-settled rule of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it was within the letter. Riggs v. Palmer, 115 N. Y. 506, 509. There is no essential difference respecting the competency of persons to serve as executors from that of administrators under section 2661 of the Code of Civil Procedure. These provisions relating to the competency of executors and administrators should be considered as *in pari materia*. They both deal with the question of the competency of persons authorized to administer and settle the estates of deceased persons, and it is a well-established rule of construction that the intention of the Legislature is to be collected from the act itself and other acts *in pari materia*. Section 2661 of the Code expressly provides that letters of administration shall not be granted to the class of persons enumerated therein, which is the same class de-

clared incompetent to act as executor by section 2612 of the Code.  It cannot, therefore, be doubted that when the Legis-lature established a standard of incompetency respecting persons to serve as executors it prohibited their appointment as effectually as though express language had been employed for that purpose, and that if incompetency existed which would prohibit the appointment of a person as administrator it would apply with equal force and effect to prohibit the appointment of such person as executor.  This discussion is only important as bearing upon the proposition that to ex-clude a person or corporation from acting as executor under a will express words of prohibition in the statute are unneces-sary if the intention of the Legislature so to do is the legal inference to be drawn from the context of the statute. Neither in section 2612 relating to the incompetency of per-sons to serve as executors, nor in any other of the various pro-visions of the Code relating to the issuing of letters testa-mentary or the granting of letters of administration, or relat-ing to the administration of estates and prescribing the powers and duties of any officer, or the court, is any reference made to trust companies or other corporations.  All these Code provisions deal with, relate to, and speak of *persons* in connection with the administration of estates.  They are the same provisions respecting incompetency of persons to serve as executors and administrators (except the incompetency of married women, removed by chapter 782, Laws of 1867, and that of dishonesty and illiteracy subsequently added), as are found in the first revision of our statutes, at a time when cor-porations were unknown in connection with the administra-tion of estates, and these provisions have ever since remained in force.

I have no hesitancy, therefore, in reaching the conclusion that so far as these general code provisions are concerned they are confined, and were intended to be confined, to natural persons and by necessary implication this Trust Company derived no right thereunder to have letters issued to it, and the court thereby obtained no authority to issue them.  If, however, at this late day in the process of devolution, it should be held that these provisions of the Code are to be

given a different meaning than was originally intended by the law-making power — that the term "person" should be held to be broad enough to include "corporation" (Stat. Const. Law, § 5), this would not aid the Trust Company in this case, because one of the class of persons rendered incompetent to serve as executors by section 2612 of the Code is "An alien not an inhabitant of this state." The word "alien" in this connection is undoubtedly used in the sense of a person who is not a citizen of the United States. This Trust Company being a foreign corporation (Gen. Corp. Law, § 3, subd. 5), located in and resident of the District of Columbia, and a corporation of a foreign State (the District of Columbia being a State within this meaning Stat. Const. Law, § 23), is deemed for the purposes of jurisdiction in the United States Courts, a citizen of the State of its creation, but it is equally well settled that a corporation is not a *citizen* within the meaning of the constitutional provision that "The citizens of each state shall be entitled to all privileges and immunities of the citizens in the several states." Blake v. McClurg, 172 U. S. 239, 259 and cases cited. And not being a citizen of the United States, it is, within the meaning of section 2612 of the Code of Civil Procedure "An alien not an inhabitant of this state," and hence incompetent to serve as executor in this State under the provisions of that section.

Again, assuming the right of the Trust Company under its charter and the laws of its creation to exercise its chartered powers and privileges beyond the boundaries of the State of its creation, this right only goes to the question of *ultra vires* and cannot confer the right upon it to exercise such powers and privileges in the State of New York, if contrary to its laws, or against its public policy. Such rights can only be granted by this State. Corporations are purely the creatures of statute and have only such powers and privileges as are conferred by their charters and the laws of their creation, including such incidental powers as are necessary to the exercise of the powers expressly conferred. Their legal residence and domicile is in the State creating them, and they have no absolute right to exercise their chartered privi-

leges or carry on their chartered business in any other State unless their charter permits it, and *by express or implied grant such other State allows them to do so;* and in the exercise of its sovereign powers the foreign State which recognizes them has a perfect right to impose such conditions and restrictions on its recognition as it chooses, not inconsistent with the Constitution and laws of the United States. Baltimore & Ohio R. R. Co. v. Kontz, 104 U. S. 644, 645; People ex rel. S. C. O. Co. v. Wemple, 131 N. Y. 64, 13 Am. & Eng. Encyc. of Law, 860.

Has then the Legislature by any express or implied grant or permission authorized foreign trust companies, or this Trust Company, to come into this State and accept the office of executor and execute the will and administer the estate of a resident testator? It is not contended by counsel for the Trust Company that any statute exists which expressly gives any such consent or permission. The only general statute of our State dealing with the subject of trust companies, in connection with their acceptance of the office of executor or administrator and the administration of estates, is found in article IV of the Banking Laws relating to the organization, powers, obligations and duties of trust companies. Under this act trust companies are authorized and permitted to accept appointments as executors, administrators, etc., and to execute the duties of those offices, and the court is expressly authorized to make the appointment; but the authority and permission in this respect are by the terms of the act itself expressly limited to domestic trust companies organized under or embraced within the terms of that act, and can in no manner be said to apply to or grant any authority to foreign trust companies in respect to executorships. Even had the language of this statute been less explicit in limiting its application to domestic trust companies it could not be held to embrace foreign trust companies, in the absence of language clearly indicating that they were intended to be embraced, under the now settled rule of law in this State that "A statute of a state granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the

state and over which it has the power of visitation and control." Matter of Prime, 136 N. Y. 347, 360; Matter of Ballies, 144 id. 132, 133.

But counsel for the Trust Company contend that the State has impliedly granted this permission as evidenced by its public policy toward foreign corporations under the doctrine of comity. To quote from the statement of their position as presented by their brief " Our (the Trust Company's) right to this appointment does not depend upon any statutory consent or permission of New York State, but solely upon whether we can, under our charter and our home laws accept and execute similar trusts, and upon the absence of a legal *prohibition* here."

The rule of law relied upon in support of this contention and as applicable thereto is, that, " unless *prohibited* by law a foreign corporation duly organized can come into this State and exercise the legitimate powers conferred upon it and carry on any business not *prohibited* by law." Dunbarton Flax Spinning Co. v. G. & J. R. Co., 87 App. Div. 21; Hollis v. Drew Theological Seminary, 95 N. Y. 166; Demarest v. Flack, 128 id. 205; United States V. Co. v. Schlegel, 143 id. 542.

Applied in the sense in which the language used in expressing this rule of law was intended there is probably no substantial conflict of authority as to the rule itself. The rules of law are too well settled to need the citation of authorities, that the domicile of a corporation is in the State creating it, and that it has no migratory powers; that the laws of the State creating and conferring powers and privileges upon it have no extra territorial effect in granting it permission to execute its chartered privileges in any other State and that it has no powers or privileges other than those conferred by the laws of its own creation.

The rule of law as intended by these authorities is, and should be, as I apprehend, that if permitted by its charter and the laws of the State creating it, a corporation may exercise its chartered privileges in any other State which grants it *permission* to do so, and such permission may rest upon express statutory enactment or be implied from the public

Surrogate's Court, Chautauqua County, December, 1904. [Vol. 45.

policy of the State in allowing foreign corporations to do business within its borders in deference to the principles of comity.

The broad and liberal policy of this State in permitting foreign corporations to exercise their chartered privileges in this State has been of such universal application as to give rise to the negative expression that unless prohibited the right exists. It is, however, nothing more than a convenience of expression, for the right must rest upon *permission* instead of *prohibition*. Keeping in mind this basic principle the use of the term prohibition is not objectionable. Not having granted such permission by statute it only remains to be considered whether by this general policy of permitting foreign corporations to come into and do business in this State (which is indicated by the cases cited) the State has by implication granted such permission respecting the class of trusts under consideration, or, to use the negative expression, are foreign corporations prohibited from executing this class of trusts in this State. This prohibition may be founded upon implication existing in our statutes relating to the organization, privileges and duties of trust companies, and the authority of the court to grant letters, etc. (Banking Law, art. IV), or it may be found in the fact that it is contrary to our public policy to permit the execution of such trusts by foreign corporations. I am of the opinion that a foreign trust company is not permitted under the laws of this State to come here and act as executor of wills and administer the estates of deceased testators, and that the court is without authority to issue letters to such a corporation, both upon the ground that the statute (Banking Law, art. IV), relating to trust companies, impliedly prohibits such appointment and upon the further ground that it is contrary to the public policy of this State to permit the execution of such trusts by foreign corporations.

In the case of Ormiston v. Olcott, 84 N. Y. 339, 343, it is declared to be the law of this State that the investment of funds of an estate by an executor or trustee in foreign securities is unauthorized (notwithstanding the absence of statutory prohibition), and the rule established is that " such an in-

vestment, which takes the trust fund beyond our own jurisdiction, subjects it to other laws and the risk and inconvenience of distance and of foreign tribunals, will not be upheld by us as a general rule, and never unless in the presence of a clear and strong necessity, or a very pressing emergency." And this rule is again recognized in Matter of Denton v. Sanford, 103 N. Y. 607, 612. A leading factor in establishing the principle upon which the rule rests is that it is against the public policy of our State to place the funds of an estate beyond the jurisdiction of our courts charged with the duty of directing and controlling their proper administration and distribution and subjecting them to foreign laws and the jurisdiction of foreign tribunals. The principles which apply to and forbid the investment of the funds of estates by executors, administrators, or other trust officers in foreign securities apply, it seems to me, with equal if not stronger prohibitory force to the appointment of foreign corporations as executors or administrators, to administer the estates of resident decedents. All of the objectionable features applicable to foreign investments, with many others, to some of which allusion will be made, are present in and applicable to the case under consideration. The Trust Company, which upon the issuing of letters to it, became an officer of this court and whose conduct in the execution of the trust committed to it is subject to the direction and control of the court, is beyond its jurisdiction and control and beyond the reach of its process. Upon its appointment and the granting of letters it became vested with the legal title to the assets of the estate, and, acting under a claim of right — presumably correct in the absence of prohibition — has removed them beyond the jurisdiction and control of the court. The removal of the assets from the State deprives the State of revenue from taxation; the court is rendered powerless to enforce its mandates and decrees and compliance therewith is made dependent upon the willingness of the executor to obey, and such conditions tend to bring the court and its orders into disrespect. It subjects the estate to foreign laws and the interested parties to the risk and inconvenience of distance and foreign tribunals in the enforcement of their rights, and it

works an injustice to our own trust companies in requiring
them to comply with conditions and assume liabilities and
responsibilities not required of foreign corporations.   And
now in the light of these conditions with the assets of this
estate in its possession beyond the jurisdiction of this court,
the position of the Trust Company is that it is not doing busi-
ness in this State within the meaning of any of our laws
relating to, and governing the conduct of foreign corpora-
tions.

These conditions and effects arise and follow as a natural
consequence of the appointment, and they tend to hinder the
proper administration of estates and hamper the enforcement
of our laws.   These consequential effects are contrary to
sound public policy and, in the absence of express permission
allowing it, the appointment from which such consequences
flow must be deemed prohibited.

The fact that the court may require a trust company to
give a bond as executor in certain cases does not go to the
question of jurisdiction, hence the giving of a bond, or the
willingness to give it, cannot be held to confer authority upon
the court to issue letters.   Neither does the fact that the
statute authorizes the appointment of a citizen of the United
States who is a nonresident of the State, establish a public
policy broad enough to warrant the inference that a foreign
corporation is likewise permitted to serve in such capacity.
The right of a nonresident citizen to act as executor or admin-
istrator within this State was doubtless granted in deference
to that public sentiment which has prevailed in this country
since the organization of our government, that the citizens of
one State should be entitled to the privileges and immunities
of the citizens in the several States, which was subsequently
embodied in the Fourteenth Amendment of the Constitution
of the United States; but there is no principle or public policy
involved which calls for an extension of this right, by analogy,
to the case of foreign corporations.

Now, let us consider the implied prohibitory effect of our
own statute on the rights of foreign corporations to execute
the trust of executor in this State.   The statute (Banking
Law, art. IV), conferring authority upon trust companies

to accept and execute the office and trust of executor, and other kindred trusts, as already stated, applies solely by its express terms to domestic trust companies organized under that act, and by section 163 of the same act broadened so as to include another particular class of trust companies, viz., not foreign — but those organized under special statutes of this State. The authority of the court to grant letters in such cases does not, however, rest upon inference to be drawn from the authority to accept, but rests upon the provisions contained in section 157 of the same act. This section expressly authorizes, and in proper cases requires, the court to issue letters testamentary to trust companies. This authority, however, by the use of the term " such " as employed in the statute is confined to domestic trust companies organized under that act and under special statutes of this State.

We are clearly of the opinion that when the Legislature thus conferred authority upon trust companies organized thereunder, *as a class,* to accept the office of executor, administrator, etc., and conferred authority upon the court to issue letters to *such* companies and then by the terms of the same act broadened the *class* so as to include all other trust companies organized under special statutes of the State, it limited the appointment to the particular *classes* enumerated, viz., domestic trust companies, and by necessary implication prohibited the appointment of, or the issuing of letters to, foreign trust companies of a similar class.

It should not be presumed, from the absence of prohibition alone, that the Legislature intended to allow foreign trust companies to execute this class of trusts in this State, by reason of its general policy toward foreign corporations, when we consider the attendant consequences to which we have alluded, and which are particularly manifest in the case under consideration. This statute in conferring upon courts the authority to issue letters and appoint trustees is dealing with the most sacred class of trusts; trusts respecting the estates of deceased persons, and living persons who, by reason of infancy or infirmities, are unable to properly safeguard and protect their own interests; trusts respecting property and estates over which our courts exercise guardianship authority

by directing and controlling the conduct of the trustees — the officers of the court — appointed to execute them. How then can it be successfully argued that the court, to whom is committed such guardianship, must appoint as such trustees, and its officers, foreign trust companies — artificial beings — beyond its jurisdiction and control and beyond the reach of its process. Far more reasonable it is to suppose that the Legislature intended, in the enactment of this statute, to limit the right of such appointments to trust companies of its own creation and exclude all others therefrom.

Moreover, the Legislature in the enactment of this statute authorizing the formation of trust companies and conferring upon them power to accept and execute this class of trusts, has imposed upon them as a condition of the exercise of such privileges unusual and peculiar liabilities and responsibilities, and it has made claims against them for trust funds entitled to priority of payment out of their property in case of dissolution.

It seems almost like impugning the intelligence of the Legislature to presume that it intended — by the absence of prohibition alone — to allow all foreign trust companies, with the measure of their liabilities and responsibilities fixed by the laws of their own creation, to come in here and demand as a matter of right authority to execute such trusts, because to do so, if the position of counsel is correct (that they have such right without complying with our statutes to enable them to do business in this State as foreign corporations), it enables them to come here and execute such trusts without obtaining permission from our State authorities, without designating any person upon whom process may be served, without maintaining any office or having an officer located here; without subjecting itself to the visitorial powers, or the power of control of any State department, and without safeguarding the rights of our own citizens in any manner save by giving a bond, which, with doubtful authority may be ordered by the court, and when clothed with authority to act, by the court, to take itself and the property of the estate committed to its care to its own domicile beyond the jurisdiction of the court.

I do not think such was the intention of the Legislature, but rather that its intention was to confine the right to execute such trusts to domestic trust companies over which the State exercises the power of visitation and control and avoid such attendant consequences; and I am of the opinion, as already stated, that the inhibition to do so is by necessary implication contained in the statute itself. *Expressio unius est exclusio alterius* applies in such case. The Court of Appeals in discussing the application of this maxim of law (Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, Werner, J.) says, " While this maxim will not be permitted to defeat the obvious legislative intent where it conflicts with the letter of a statute, such intent must, nevertheless, be discernable in the context of the statute itself." As respects the right of foreign trust companies to execute this class of trusts no such intent is to be found or discernable in the context of the statute itself, and hence the maxim must be given its full and natural application. Its application to this class of cases is to prohibit foreign trust companies from executing the office and trust of executors, administrators, etc., in this State.

The conclusions which we have reached in no manner conflict with the rule of law contended for by counsel for the Trust Company concerning the right of foreign corporations to exercise their chartered privileges in this State, as indicated by the authorities, because all the authorities recognize and assert the doctrine that such right is withheld if its exercise here be contrary to our laws or public policy, and hence the legitimate scope of the authority and right of foreign corporations to come into this State and exercise their chartered privileges in the execution of trusts, prior to the passage of chapter 492, Laws of 1904, was, in my opinion, limited and confined to the execution of trusts founded upon contractual relations, and only domestic trust companies were authorized to execute trusts of the class under consideration, whose execution is under the direction and control of our courts and the trustees, officers thereof.

If our views are correct in this respect it makes harmonious the action of the Legislature by the passage of chapter 492

35

of the Laws of 1904, prohibiting the execution of this class of trusts by foreign trust companies, with its previously understood policy toward the right of foreign corporations to do business in this State, as indicated by the authorities. It simply declares the existing law respecting the execution of this class of trusts, made advisable or expedient by encroachments, and avoids any charge of vacillation or radical changes in our well-established public policy toward foreign corporations.

The fact that the petitioners consented to the issuing of letters to the Trust Company as executor does not, in my opinion, estop them from maintaining this proceeding. The right of the Trust Company to act as executor, as well the authority of the court to issue letters to it, is jurisdictional, and it is a well settled principle of law that consent cannot confer jurisdiction in such matters. Consent may confer jurisdiction of the person, but is ineffectual to confer jurisdiction of the subject-matter, and hence the consent of the petitioners in this case cannot be held to confer authority upon the court to make the appointment where no authority existed at law.

In view of the conclusions reached I do not deem it necessary to discuss the various other questions raised by counsel for petitioners respecting the authority of this Trust Company to act as executor in this State, or the effect of chapter 492 of the Laws of 1904, to prevent the further exercise of its chartered privileges in the execution of such trust (if such right previously existed), and I do not pass upon these questions.

The only remaining question to be considered is whether this Trust Company, by reason of its having invested moneys of the estate in securities unauthorized by the laws of this State, is unfit for the due execution of its office. This question involves the conduct of the Trust Company in the management of the estate. The moneys, stocks, and securities constituting nearly the entire bulk of the estate were removed by the Trust Company from this State to its own domicile in the city of Washington, D. C., prior to December 1, 1902, and on December second thereafter it loaned to Henry Hurt, one of its own directors, $60,000 of the estate moneys, taking his

individual note therefor, secured by a pledge of bank stock as collateral.   The excuse offered by Mr. McKenna, its trust officer, for making this investment is, to quote his language, " The reason for making the investment was the fact that shortly after we came into the possession of the estate we collected from the banking firm in New York, James D. Smith & Co., some $77,000 in cash, money, and it was too much money to lie idle," and its counsel urges in extenuation that the loan was only intended as a temporary investment and has since been paid.

Between October 27, 1902, and July 14, 1903, the Trust Company invested $60,672.50 of the moneys of the estate in railroad bonds; $12,106.88 in railroad stocks, and $400 in its own corporate stock — altogether $73,179.38.   On November 23, 1903, the president of the Trust Company verified an account of its proceedings as executor, and on December 18, 1903, the same was filed in the surrogate's office.   Down to that time these investments, aggregating $133,179.38 were the only investments which it had made and every dollar thereof was unauthorized by the laws of this State.   The evidence fails to disclose what part, if any, of these investments in bonds and stocks have been realized upon.   Suffice it to say that it does affirmatively show that some, at least, are still outstanding.

While it is not sought to charge the Trust Company personally as in case of devastavit with these improper investments, nevertheless the adult residuary legatees objected to and criticised them, upon discovery, and the trust officer of the executor agreed to make no others of that class without consulting them, and the infants who have a contingent interest in the estate and funds are incapable in law of giving consent thereto.   The reasons given in explanation of these investments and as an excuse therefor are, that in the District of Columbia there is no statute or other law limiting or prescribing the class of securities in which trust funds must be invested; that they were in the same class in which the estate held investments, made by the testator in his lifetime; that the officers of the Trust Company considered them good investments and were ignorant of the laws of this State limit-

Surrogate's Court, Chautauqua County, December, 1904.   [Vol. 45.

ing the class of securities in which it was proper to invest trust funds.  Not one of the explanations offered by the Trust Company affords a reasonable excuse for making such investments.  The inference is clear that after this Trust Company obtained possession of the assets of the estate and removed them to its own domicile, it proceeded with the administration of the estate, as respects the investment and management thereof, in accordance with the laws of its own domicile and in utter disregard of the laws of this State.  This is shown, not alone by the investments made and the excuses offered therefor, but by the fact, as testified to by its trust officer in charge of these matters — an attorney of thirty years' standing — that he never investigated the statutes of this State as to what constituted proper trust investments or sought advice from counsel upon the subject.

The Trust Company was advised, however, by its counsel, more than a year after its appointment, and after these investments had been made, and at a time when they were being criticised by the legatees, that they were improper investments for trust funds under the laws of this State.  Notwithstanding this it invested $60,000 at least, and probably more, of the moneys of the estate on mortgage securities upon real estate situate in Washington, D. C.  These investments were made by the Trust Company's turning over unto itself as executor mortgages which it already held and had on hand, and this without guaranty of payment on its part.  These investments are condemned by the principle laid down in the case of Ormiston v. Olcott, 84 N. Y. 339, 343, as being beyond our own jurisdiction and subject to other laws and foreign tribunals.  Furthermore, as shown by the evidence, the basis of loans made by this Trust Company is sixty-six and two-thirds per cent. of the value of the property, whereas under our statute (Laws of 1902, chap. 295), the value of the property is required to be worth fifty per cent. more than the amount loaned thereon.

These investments in mortgage securities are not referred to in the petition and probably were unknown to the petitioners at the time of making it, and they cannot, therefore, be considered as a proper basis for revocation of letters in this

proceeding. They are alluded to here not for such purpose, but merely as characterizing the conduct of the executor respecting the investments complained of and as showing its apparent disregard for the laws of this State, which should at all times govern in making investments. The excuse that the investments were made in the same class of securities as those in which the testator in his lifetime had made investments and which are held by the estate, is wholly untenable. With respect to such investments, in the absence of directions contained in the will to the contrary, it became the bounden duty of this executor to convert them and invest the proceeds in securities authorized by law, within a reasonable time after its appointment. Matter of Wotton, 59 App. Div. 584, affd., 167 N. Y. 629; Matter of N. Y. Life Ins. & Trust Co., 86 App. Div. 247; Toronto Gen. Trust Co. v. C. B. & Q. R. R. Co., 64 Hun, 1, 9, affd., on opinion below in 138 N. Y. 657. The excuse of ignorance of the laws of this State governing the investment of trust funds, coupled with the investments complained of, aggregating so large an amount of money, equivalent to nearly two-fifths of this entire estate, and coupled with the fact that no investigation was made or counsel sought concerning the laws of this State governing investments, presents strong evidence of such a degree of carelessness or wantonness as amounts to misconduct in the execution of its office, and infidelity to its trust, and is of such moment as to render it unfit for the due execution of its office and calls for the revocation of its letters.

The fact that no apparent loss has thus far resulted from these unauthorized investments, and that the interested parties have not, upon the accounting, sought to have the trust company charged with them as in the case of devastavit, does not alter the case. And the argument presented by the brief of counsel for the trust company, made with more particular reference to the investments in mortgage securities, that it will be time enough for the petitioners to complain respecting these investments when the estate has suffered a loss therefrom and the executor has sought to avoid responsibility therefor, is not sound in principle. It illustrates, however, the attitude of the Trust Company toward the parties interested in

Surrogate's Court, Chautauqua County, December, 1904. [Vol. 45.

this estate, as indicated by the course pursued by it in the administration respecting investments.

These parties have a right to insist, and demand as a matter of right, that this estate be invested and administered in accordance with the law of this State. This is the precise obligation which the trust company took upon itself when it undertook the execution of this trust. And when it made the series of investments complained of, it violated this obligation and was guilty of infidelity to its trust. The argument that it is wealthy, and able, and willing to make good any loss is at once a confession and avoidance. The interested parties are entitled to insist upon the protection and security afforded them by our laws in safeguarding investments of trust funds, and are not required to be content with the security alone which the financial responsibility of the executor affords them. This responsibility is at all times subject to fluctuation, and dependent upon the skill and ability of its managers, and the present measure of its responsibility may not be the standard which will exist in years to come when the distribution of these moneys will take place, and, furthermore the rules of law governing the investment of trust funds apply with equal force to the wealthy as to those less favored financially.

The conclusions which I have reached upon this branch of the case are not to be understood as warranting the inference that every technical breach of trust by an executor will call for a revocation of his letters. The protection of the estate and of the substantial rights of interested parties should be the controlling principle in determining whether or not letters should be revoked. It was upon this principle that the case, Matter of O'Hara, 62 Hun, 531, relied upon by counsel, was decided. A careful examination of that case leads me to the conclusion that while laying down the proper principles of law, applicable to this class of cases, the circumstances of that case and the questions involved therein are so different from the questions involved in and the facts surrounding this case as to make it inapplicable as a controlling authority in this case.

It appears that at some time after making the investments

in question, and prior to the institution of this proceeding, the trust officer of the executor met and conferred with certain of the petitioners respecting these investments, and his testimony is given as tending to show a ratification, or at least acquiescence, in what had been done.   From the whole examination of this trust officer I am satisfied that these parties never gave their assent to these investments or ratified them in such manner as to estop them from instituting this proceeding . It does 'not appear, however, that Sarah D. Avery or McDougal Avery ever gave their assent thereto, or in any manner ratified any of them.   Furthermore the infants contingently interested in this estate were unable to consent thereto, or approve the same, and their interests are entitled to the protection of the court.

It follows from the conclusions reached that the letters testamentary issued to the American Security and Trust Company should be revoked, and a decree will accordingly enter. The question of costs will be adjusted upon application.   The attorney for petitioners may prepare proposed findings and a decree in accordance herewith.

Decreed accordingly.