In the Matter of the Judicial Settlement of the Accounts of William C. Wotton, as Executor, etc., of Phebe E. Bonnefoux, Deceased.

William C. Wotton, as Executor, etc., of Phebe E. Bonnefoux, Appellant; Clara B. De Reau and Others, Respondents.

*Trust investments — duty of a trustee to sell unauthorized securities — objection, when ineffective — request of the testatrix and the life beneficiary to keep them — denial of commissions justified.*

A trustee holding funds for investment is bound to invest the same in government or real estate securities except so far as the Legislature has authorized him to invest in other specified securities.

*Semble*, that if a trustee, finding a portion of the trust estate invested in unauthorized interest-bearing securities, sees fit to continue such investments after he has had a reasonable opportunity to sell them without loss and to reinvest the proceeds in authorized securities, he will be liable for any loss resulting from his failure to sell the unauthorized securities except in an exceptional case.

Where a trustee under a will, finding that the testator had invested a portion of the trust fund in interest-bearing railroad bonds, held such bonds for nine years and finally sold them at a loss, an objection interposed upon his accounting to that part of the account in which he credited himself with the loss arising upon the sales of the bonds, upon the ground that such bonds were specifically bequeathed to the life beneficiary and to the remaindermen after her death, and that for that reason the sale was not only unnecessary but that he had no right to make it, does not bring up for review the question whether the trustee was negligent in making the sale.

*Semble*, that the trustee was not justified in retaining the unauthorized securities as an investment, notwithstanding the fact that the life beneficiary of the

trust communicated to him a letter written to her by the testatrix in which she stated that she did not desire to have any of her securities changed, and that the life beneficiary concurred in such desire.

Where it appears that the trustee sold a portion of the trust estate and made no effort to reinvest the proceeds, but deposited them in his own bank to his individual credit, paying no interest to the life tenant, and that he subsequently turned such proceeds over to his sister without keeping anything to show for them, and that she held them without paying interest until the accounting, the surrogate is justified in refusing to allow commissions to the trustee.

APPEAL by William C. Wotton, as executor, etc., of Phebe E. Bonnefoux, deceased, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 4th day of May, 1900, settling his accounts as such executor and overruling exceptions filed by him to the report of the referee and denying his motion for a reargument of the exceptions.

*Charles H. Griffin,* for the appellant.

*Ralph S. Rounds,* for the respondents.

RUMSEY, J.:

Upon the settlement of the accounts of the appellant as the executor under the will of Phebe E. Bonnefoux, deceased, the surrogate, among other things, charged him with a loss upon the sale of some bonds belonging to the estate to the amount of $1,326 and disallowed his commissions; and although various other questions were raised in the court below, it was stipulated that nothing should be presented in this court except the propriety of those two rulings of the surrogate.

As to the first, the facts are that Mrs. Bonnefoux died in 1888 and the appellant was appointed her executor in the month of June of that year. At that time, among other property of the estate, were four bonds of the Kansas and Pacific Railroad Company for $1,000 each, which were appraised at $4,460. They were due on the 1st of May, 1919, and bore interest at the rate of six per cent. Interest was paid upon them, as appears by the papers, down to 1894, at which time they became very seriously depreciated in value and no further interest was paid, but the appellant continued to

hold them until 1897, when he sold them at a price which resulted in a net loss of $1,326 on the inventoried value, with which sum the appellant was charged. It appears from the papers that the income of the property was given for life to Mrs. Clara B. De Reau, a daughter of the testatrix, with remainder over to certain persons who are made parties to this appeal. Mrs. Bonnefoux in 1884 wrote a letter to her daughter Mrs. De Reau, in which she stated that she did not desire to have any of her securities changed and that she had selected those that had a long time to run with that object in view. This letter was communicated by Mrs. De Reau to the executor in 1888 or 1889, and at the time when the letter was shown to him Mrs. De Reau stated that it was also her desire that the instruments should remain as they then were. For a long time after that the interest was paid. The legatees filed objections to the executor's account, in which among other things they objected to the sale of these bonds and the matter was referred to a referee, who decided as a matter of law that the executor was not author ized to retain the securities as an investment, but should have sold them and converted them into authorized securities, and because he did not do this he was charged with the loss. The referee does not find that the executor was guilty of negligence in his management of the estate, or that in the failure to sell them there was any lack of prudence or diligence, nor is any reason derivable from his report for charging the executor with this loss except that he retained the bonds and did not sell them and invest the proceeds in securities authorized by law as soon as practicable after they came into his possession.

The executor claims that in view of these facts he was justified in permitting the original investments as made by the testatrix to stand, and that if he did so in the exercise of his discretion he would not be chargeable with the loss that resulted from their depreciation. We are not inclined to adopt this view of the duties of an executor. It has been settled in this State that a trustee holding funds for investment is bound to put them in government or real securities. (*King* v. *Talbot*, 40 N. Y. 76.) The rule laid down in that case has been enforced by the courts and trustees have been held to that form of investment except so far as the Legislature has from time to time authorized an investment by trustees in certain

other specified securities.  But the fact that the Legislature has given to trustees the right to invest in particular securities in addition to those allowed by the courts, may be taken as an indication of its policy that the power of trustees to make investments is not to be enlarged further than it already has been by statute.  It is claimed, however, that although as an original proposition a trustee is limited in the power of investment to those securities authorized by law, yet, when he finds the investment already made by the testator in interest-bearing securities, he is at liberty in his discretion to continue to hold them.

We are not inclined to lay down a hard and fast rule in respect of this matter.  When a trustee finds the estate committed to him already invested in interest-bearing securities, we are not inclined to say that it is his absolute duty at once to dispose of them, without regard to the market, or the demand for them, or the ruling price, or the probability of an advance in their value.  It is sufficient to say, however, that, ordinarily, if a trustee sees fit to continue such investments after he shall have had a reasonable opportunity to sell them without loss and to invest them in those securities which by law he is authorized to hold, it must be an exceptional case which will justify him in his failure to do so where as a result of that failure there has been a loss.  (See Hill Trustees, *380, *381; Perry Trusts, §§ 465, 466.)

But the question whether this investment was proper in this case is not in our judgment presented in such a way as to warrant the referee in considering it, or in such a way as to justify the surrogate in charging the executor with the loss.  The sole point upon which he is sought to be charged with the loss is that he should have sold these bonds shortly after they came into his hands.  But no such objection is made by the contestants.  The objection to that part of his account in which he has credited himself with the loss arising upon the sales of the bonds is put upon the ground that they were specifically bequeathed to Mrs. De Reau for life and to the remaindermen after her death, and that for that reason the sale was not only unnecessary, but he had no right to make it.  We do not think that this objection brings up the question of the negligence of the executor in making this sale.  It amounts substantially to an admission on the part of the contestants that the bonds should not have been

sold, but should have been retained, and for that reason also we think that the surrogate erred in that part of his decree.

The only other question presented in view of the stipulation is whether that part of the decree disallowing commissions is proper. It is claimed by the respondent that this question is not properly raised by exceptions, and for that reason cannot be considered. We do not deem it necessary to decide upon that point. It appears in the case that the executor, after having retained these bonds for a long time, sold them with other assets of the estate, amounting in the aggregate to over $15,000 ; that he made no effort to reinvest the proceeds, but turned them over to his sister without keeping anything to show for them, and she held them without paying interest down to the time of the accounting. Before turning the proceeds over to his sister he had deposited them in his own bank to his own credit, mingling the fund with his personal assets, so that for a long time this money was at the risk of his own business and subject to his debts. During that time he paid no interest to the life tenant. The whole transaction with respect to this matter, after he sold this property, shows the grossest carelessness on his part with regard to the management of this fund, amounting to misconduct or maladministration, and, therefore, I think that the determination of the surrogate to disallow commissions to the executor was proper. (*Stevens* v. *Melcher*, 152 N. Y. 583.)

For these reasons this part of the decree of the surrogate must be affirmed, but the decree must be modified by striking out so much of the charge against the executor as is represented by the sum of $1,326, being the amount of the loss on the inventory, so that the balance for which he shall be charged is $1,055.41 instead of $2,381.41, and as so modified the decree must be affirmed, without costs to either party in this court.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Decree modified as stated in opinion, and as modified affirmed, without costs to either party.