Testator left personalty greatly in excess of his debts and expenses of administration.　He gave his wife, through his will, the full use of his property for life, and provided that on her death the entire estate should be divided among his three children equally, except that on sale of a certain house formerly owned by one of the children the executor should pay over to such child the excess of the cost of the property to the testator up to the day of the sale.　*Held* to create no equitable conversion of the real estate, but that the wife took a life estate and the children a vested remainder, subject to the exercise of the power of sale given the executor under the will.

2. LIFE ESTATES—DUTIES OF LIFE TENANT.

Where, under a will, the widow takes a life estate in certain property, the duty of keeping it in repair and the payment of taxes devolves on the life tenant.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Life Estates, §§ 37–39.]

3. EXECUTORS—CONTROL OF ASSETS—INVESTMENTS.

Where the management of an estate was largely intrusted by testator's widow to her coexecutor, a son-in-law, who resided out of the state, and no account was rendered by the executors during the lifetime of the widow, they would be deemed to have held the property in which she had a life interest as executors, in the absence of evidence that it had been turned over to her, charged with the duty of investing the same for the benefit of the wife, in accordance with rules governing trustees as to investments.

4. SAME—LOAN OF FUNDS OF ESTATE.

Where an active executor in the state of Michigan loaned funds of a New York estate, about three months after the death of testator, to the amount of nearly $40,000, with interest, and the note was not paid for more than 12 months after it became due, it was an unauthorized investment and constituted a breach of trust by the executor.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 420, 433.]

5. SAME.

Where an executor loaned money of the estate on farm property in another state, of whose value he had no personal knowledge, on valuations and abstracts submitted to him by bankers of such state, such loans were unauthorized and illegal.

[Ed. Note.—For cases in point, see vol. 22, Cent Dig. Executors and Administrators, §§ 420, 433.]

6. SAME—ALLOWANCE OF CLAIMS.

Payment by an executor of a claim presented by his coexecutor, amounting to nearly $40,000, which had not been allowed under Code Civ. Proc. § 2719, and which he should have opposed, because barred by the statute of limitations, was unwarranted.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 1099–1106.]

7. SAME—SETTLEMENT of ACCOUNTS—CONCLUSIVENESS.

Where a decree settling the accounts of a sole surviving executor, allowing an amount paid by him in settlement of her claim, was not reversed, it was conclusive evidence that it was correct, in a proceeding to revoke letters testamentary issued to him.

8. SAME—INVESTMENTS—ESTOPPEL OF LEGATEE TO OBJECT.

A decedent left stocks in different banking institutions and in a man-

96 N.Y.S.—15

ufacturing corporation, which the executor should have converted into money. Upon a division of said stocks and. others securities, one of testator's children accepted a portion thereof as a partial payment in settlement of her portion of the personalty. ·*Held*, that she was estopped from questioning any such investments, except so far as they might relate to the conduct of the executor in the management of the estate.

9. SAME—REVOCATION OF 'LETTERS.

On a proceeding under Code Civ. Proc. § 2685, subds. 2, 5, to revoke letters testamentary, evidence *held* to entitle petitioner to a decree revoking the letters,. though there was no evidence that by reason of investments made by the executor any loss had been occasioned.

In the matter of the revocation of letters testamentary of George M. Burr, executor of Henry A. Sheldon. Letters testamentary revoked.

Weill & Weill (T. B. and L. M. Merchant, of counsel), for petitioner. Millard & Stewart (S. Charles Millard and Charles R. Stewart, of counsel), for executor, George M. Burr.

Curtis, Arms & Keenan, for administrator, Evert Van Slyke.

PARSONS, S. This is a proceeding by Mary E. Wiggins, under subdivisions 2 and 5 of section 2685 of the Code of Civil Procedure, praying for a decree revoking the letters testamentary heretofore issued to George M. Burr as one of the executors of the estate of Henry A. Sheldon, deceased. Henry A. Sheldon died on March 25, 1900, leaving a last will and testament which was duly admitted to probate in the county of Broome and state of New York on November 28th of the same year. The said will, among other things, provides as follows:

"First. After all my lawful debts are paid and discharged, I give, devise and bequeath to my beloved wife Scebelia H. Sheldon all my real and personal property of whatsoever name and nature and wheresoever situate, and the rents, issues and profits thereof for and during the term of her natural life.

"Second. From and after the decease of my said wife I give, devise and bequeath all of my estate both real and personal, and wheresoever situate, and the rents, issues and profits thereof to my beloved children Sarah D. Van Slyke, Mary E. Ream and Isabel D. Burr, to be divided equally between them share and share alike, to be theirs absolutely and forever.

"Third. Should the house and lot situate in the city of Syracuse, N. Y., formerly owned and occupied by my daughter Sarah D. Van Slyke, be sold by my executors for a sum in excess of its cost up to the present time, it is my wish and I do direct my said executors to pay over to my said daughter the said excess of cost to me up to the day of sale.

"Fourth. I will and ordain that the executors of this my last will and testament for and toward the performance of said testament, shall with all convenient speed after my decease bargain, sell and alien in fee simple all my lands, for the doing and perfect finishing whereof, I do by these presents give to my said executors full power and authority to grant, alien, bargain, sell and convey and assure all the said lands to any person or persons and their heirs forever in fee simple by all and every such lawful ways and means in the law as to my said executors shall seem fit or necessary, and to execute the necessary conveyances therefor.

"Fifth. It is my wish and desire that my estate shall be settled at the least possible expense, that no portion of my estate be sacrificed, and that my executors. hereinafter named shall not be required to give bonds."

The persons named as executors of the said will were Scebelia H. Sheldon, the wife of the said decedent,. George M. Burr, a son-in-law of the decedent, and Sarah D. Van Slyke, a daughter of the said dece-

dent. Only two of the persons thus named qualified as executors, namely, Scebelia H. Sheldon and George M. Burr, and letters testamentary were duly issued to them on the 28th day of November in the year 1900, and they immediately entered upon the performance of their duties as such. Henry A. Sheldon left him surviving Scebelia H. Sheldon, his widow, and three daughters, namely, Sarah D. Van Slyke, Mary E. Wiggins, the petitioner in this proceeding, and Isabel D. Burr, the latter being the wife of George M. Burr, the executor against whom these proceedings are instituted. Subsequent to the making of the will Mary E. Ream married, and her name is now Mary E. Wiggins. Sarah D. Van Slyke died subsequent to the death of Henry A. Sheldon, and her husband, Evert Van Slyke, was appointed administrator of her estate. Scebelia H. Sheldon died on January 26, 1904, leaving George M. Burr the sole surviving executor of the estate of Henry A. Sheldon. George M. Burr was at the time of the making of the will of the said Henry A. Sheldon, and ever since has been, a resident of Manistee, Mich., while the said Scebelia H. Sheldon, at the time she qualified as executor and down to and including the time of her death, was a resident of the city of Binghamton, Broome county, N. Y. Henry A. Sheldon at the time of his death was the owner of several houses and lots situate in the city of Binghamton and in and about the village of Whitney's Point, and several farms situate in the county of Broome.

It is claimed on the part of the petitioner that it was the imperative duty of the executors to dispose of all the real estate left by the testator within a reasonable time after his death, and that by the terms of the will there was an equitable conversion of said real estate. The petitioner further contends that it was the duty of the executors to keep all of the buildings comprising a part of the said real estate in a good state of repair, and all of the farm lands in a good state of cultivation, but that the executors had failed to perform these several duties, in that they have permitted the said several buildings and farms to run down and go to waste and thereby deteriorate in value. In order to determine these questions it becomes necessary to consider the terms of the will, and place some construction thereon. In doing this, the court has sought to get at the intention of the testator as expressed by the terms of the will, and to ascertain his general scheme in the disposition of his property.

It is apparent from the first provision of the will that it was the intention of the testator, subject to the payment of his lawful debts, to give his wife, Scebelia H. Sheldon, the full use of all of his property for and during the period of her natural life, and this provision is in no way qualified or limited by any other provision contained in the will. It is apparent from the second provision of the will that it was the intention of the testator, upon the death of his wife, that his children should become possessed of his entire estate, share and share alike, and this is in no way qualified except by the third provision of the will, which says:

"Should the house and lot in the city of Syracuse, N. Y., formerly owned by my daughter Sara D. Van Slyke, be sold by my executors for a sum in excess of its cost up to the present time, it is my wish and I do direct my

said executors to pay over to my said daughter the said excess of cost to me up to the day of sale."

It will thus be seen that the interests which the said several children have in the estate of the said Henry A. Sheldon are the same, whether we regard the property left by the decedent as real estate or personal property, and it nowhere appears that an equitable distribution of the property could not be had without a sale of the real estate.

We again turn to the fourth provision of the will, which reads as follows:

"I will and ordain that the executors of this my last will and testament, for and toward the performance of said testament, shall with all convenient speed after my decease bargain, sell and alien in fee simple all my lands, for the doing and perfect finishing whereof I do by these presents give to my said executors full power and authority to grant, alien, bargain, sell and convey and assure all the said lands to any person or persons and to their heirs forever in fee simple by all and every such lawful ways and means in the law as to my said executors shall seem fit or necessary, and to execute the necessary conveyances therefor."

It will be noted, from the provision of the will last above quoted, that the testator had in mind that part of his will which provides that, after the death of his wife, his property should be divided between his three children, naming them, share and share alike, and that in order to make such a division of his property it might be advisable, if not necessary, to sell his real estate for the purpose of effecting an equal distribution. Note the expressions used by the testator in the said fourth provision of his will as bearing on the purpose and object of a sale of his real estate. In the said provision we find these words: "For and towards the performance of said testament." Again: "For the doing and perfect finishing whereof." These expressions reflect the thought which was uppermost in the mind of the testator, and that was that his property should be equally divided between his children, and that his executors in their discretion might sell and convert the real estate into money for the purpose of aiding them in the matter of a distribution of his estate among his children. The will does not create an equitable conversion of the property, but by the terms thereof Scebelia H. Sheldon took a life estate, and the remainder vested in the children, subject to the exercise of the power of sale by the executors. Morse v. Morse, 85 N. Y. 53; Matter of Tienken, 131 N. Y. 391, 30 N. E. 109. In the latter case Finch, J., in his opinion says:

"The fiction of an equitable conversion is adopted only where it is a needed element to determine ownership. Equity will not resort to the fiction where the same right devolves upon the same person whether the property be treated as money or land, and where no rights of third persons depend upon the conversion."

The property having passed to the widow and children, as hereinbefore stated, the executors as such, in view of the fact that the testator left personal property greatly in excess of his debts, funeral expenses, and expenses of administration, would have nothing to do in the way of keeping in repair and in a state of preservation any of the real property belonging to the testator; but such burdens as the paying of taxes and keeping the buildings in repair and the premises in a good state of preservation would devolve upon Scebelia H. Sheldon,

the life tenant.   Macy v. Sawyer, 66 How. Prac. 381.   In view of the above, it not only becomes unnecessary, but it would be improper, for us at this time to determine the question whether or not any of the said several parcels of real estate had run down and gone to waste and thereby deteriorated in value.

While there were two executors of this estate, it appears that the active management was largely intrusted by Mrs. Sheldon to her coexecutor George M. Burr, and that any and all investments of the funds belonging to the estate were made by George M. Burr.   It appears from the inventory, and I hold as a matter of fact, that the testator left personal property in excess of $187,000.   The petitioner herein claims that the executor Burr has improvidently managed the estate, and that he has made unauthorized and illegal investments of the funds thereof, and that he has paid at least one claim which was not only barred by the statute of limitations, but without the said claim having been legally established.   These questions bring us to a consideration of the duties which devolve upon executors and trustees in the management of an estate.   In brief, it is the duty of the executor to collect the assets, preserve the same from waste, and to pay the debts and legacies, while with a trustee it is his duty to invest and manage the particular fund of trust estate in accordance with the directions contained in the instrument creating the trust and the law governing such estate.   It is stated in Willard on Executors and Surrogates (page 389) that:

"Where there is a general bequest to one for life, and remainder over, the executor should convert the whole into money and invest it in permanent securities.   The interest only is payable to the tenant for life, and on his death the residue belongs to the remainderman."

In the case of Livingston v. Murray, 68 N. Y. 485, at page 492, the court, in considering a case where there was a general bequest to A. for life with remainder to B., in a will where executors were appointed, says:

"In such a case there is no other trust than the law creates and vests in the executors.   They take the legal title to all the personal property.   They must convert it into money, pay debts, expenses, and specific legacies if any, and as they are bound to execute all the provisions of the will, they are charged with a duty as to both A. and B.   They must give to A. what belongs to him, and then to B. what belongs to him.   They cannot discharge their duty by delivering the whole property to A., and thus imperiling the rights of B."

Where executors turn over to a life legatee a legacy in money, it is, generally speaking, their duty to exact from such legatee security for the redelivery of the corpus of the legacy to the remaindermen upon the termination of the life estate.   If, on the other hand, the executors should turn over to the party having the life estate articles which were bequeathed to such person, they should require from such legatee a written inventory and agreement setting forth his own interest in the property and acknowledging that on his death it belongs to the person or persons designated in remainder.   Willard, Ex'rs & Sur. 389; Matter of McDougall, 141 N. Y. 21, 35 N. E. 961; Livingston v. Murray, supra; Matter of Talmage, 32 App. Div. 10, 52 N. Y. Supp. 710.   If the property is not turned over to the life tenant in the man-

ner hereinbefore specified, then the property must be invested and the tenant for life paid the income. Calkins v. Calkins, 1 Redf. Sur. 337.

No account was rendered by the executors during the lifetime of Scebelia H. Sheldon, and there is no evidence before the court which shows that any of the property constituting the life legacy was turned over to Mrs. Sheldon. Therefore the said executors are deemed to have held the same in their representative capacity, and it was their duty to invest the same and pay the income thereof to Scebelia H. Sheldon until such time as the life estate should terminate. In handling such funds they are performing trust duties and are to be governed by the rules governing trustees in the matter of investments. The executors, in making investments, were called upon to exercise that degree of diligence and prudence as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs. King v. Talbot, 40 N. Y. 76; Ormiston v. Olcott, 84 N. Y. 339; Matter of Denton v. Sanford, 103 N. Y. 607, 9 N. E. 490. In the case of King v. Talbot, supra, Woodruff, J., says:

"The real inquiry, therefore, is, * * * Has the administration of the trust * * * been governed by fidelity, diligence, and prudence? If it has, the defendants are not liable for losses which nevertheless have happened."

The court then defines fidelity and diligence as follows:

"Fidelity imports sincere and single intention to administer the trust for the best interest of the parties beneficially interested, and according to the duty, which the trust imposes. And this is but a paraphrase of 'good faith.' The meaning and measure of the required prudence and diligence has been repeatedly discussed, and with a difference of opinion. * * * My own judgment, after an examination of the subject, and bearing in mind the nature of the office (referring to that of executors), its importance, and the considerations which alone induce men of suitable experience, capacity, and responsibility to accept its usually thankless burden, is that the just and true rule is that the trustee is bound to employ such diligence and such prudence in the care and management as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs. This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of the trust, and the consequences of a mistake in the selection of the investment to be made. It therefore does not follow that, because prudent men may, and often do, conduct their own affairs with the hope of growing rich, and therein take the hazard of adventures which they deem hopeful, trustees may do the same. The preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded."

In the case just referred to, the court held that the defendants were not at liberty to invest the trust fund in stock of the Delaware & Hudson Canal Company, of the New York & Harlem Railroad Company, of the New York & New Haven Railroad Company, of the Bank of Commerce, or of the Saratoga & Washington Railroad Company. In the case of Ormiston v. Olcott, supra, proceedings were had before the surrogate of Otsego county, requiring a trustee to show cause why he should not pay over to the cestui que trust a certain amount on account of a bond which the trustee had taken from parties in Ohio, which was secured by a mortgage on lots in the said state of Ohio. The facts show that the co-trustee, who was then deceased, had com-

mingled the trust funds with his own, and upon his death the surviving trustee took the bond and mortgage in question with a view of securing and collecting the moneys which had passed through the hands of his co-trustee.   Justice Finch, in delivering the opinion of the court, says:

"Our own study of this case and the very careful researches of the counsel by whom it was argued have alike failed to discover any judicial decision or any-legislative enactment which directly and in terms declares, as the law of this state, that an executor or testamentary trustee may not invest the funds in his custody, under any circumstances, in good mortgages upon real estate situate outside of the state; and yet the general drift of authority and considerations relating to the safety of trust funds seem to require that such should be regarded as the general rule, and that investments beyond the jurisdiction of the court should not be sustained unless in very rare and exceptional cases, and under very unusual and peculiar circumstances.   The rule should not be made arbitrary and inflexible, and so rigid as to admit of no possible exceptions; for it is merely an outgrowth or consequence of the broader and admitted proposition that the duty of a trustee in making investments is to employ such diligence and such prudence as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs.   While, therefore, we are not disposed to say that an investment by a trustee in another state can never be consistent with the prudence and diligence required of him by the law, we still feel bound to say that such an investment, which takes the trust fund beyond our own jurisdiction, subjects it to other laws and the risk and inconvenience of distance and of foreign tribunals, will not be upheld by us as a general rule, and never unless in the presence of a clear and strong necessity, or a very pressing emergency.   The cases in our courts have quite clearly recognized the rule that an executor must invest in government or real estate securities; but apparently no occasion has arisen until the present to determine the effect of such an investment made beyond our jurisdiction.   It would often be unjust to beneficiaries to compel them to accept such investments, and tend to increase the risk of ultimate loss.   The proper and prudent knowledge of values would become more difficult and uncertain.   Watchfulness and personal care would in the main be replaced by confidence in distant agents, and legal remedies would have to be sought under the disadvantages of distance and before different and unfamiliar tribunals.   We do not hesitate, therefore, to recognize and declare as the general rule that the trustee who invests beyond the jurisdiction does so at the peril of being held responsible for the safety of the investment."

In Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753, where they sought to charge an executor with the loss which resulted in his not disposing of certain railroad bonds, which belonged to the estate at the time of his death, until a number of years after the executor had been engaged in the performance of his duties as such, the court in his opinion said:

"It has been settled in this state that a trustee holding funds for investment is bound to put them in government or real securities.   King v. Talbot, 40 N. Y. 76.   The rule laid down in that case has been enforced by the courts, and trustees have been held to that form of investment except so far as the Legislature has from time to time authorized an investment by trustees in certain other specified securities.   But the fact that the Legislature has given to trustees the right to invest in particular securities in addition to those allowed by the courts may be taken as an indication of its policy that the power of trustees to make investments is not to be enlarged further than it already has been by statute."

In this connection I desire to call attention to the fact that our Legislature has declared that it shall be "lawful for executors, administrators, guardians and trustees, and others holding trust funds for

investment, to invest the funds so held by them in trust, in bonds or stocks of any of the cities of this state issued pursuant to the authority of any law of this state." Laws 1889, p. 63, c. 65. At a still later date, we have another expression from our Legislature, which provides that:

"An executor, administrator, guardian, trustee or other person holding trust funds for investment may invest the same in the same kind of securities as those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unencumbered real property in this state worth fifty per centum more than the amount loaned thereon." Laws 1902, p. 852, c. 295.

It appears from the evidence that the executor Burr loaned to one Louis Sands, of the state of Michigan, the sum of $37,124.94, which said sum, by the terms of the loan, was payable one year from the date thereof, with interest at 6 per cent. The said loan was evidenced by a promissory note. It further appears that the said note was paid on July 24, 1902. As will be observed, this loan was made by the executor Burr some 3 months after the decease of the testator and was not paid until more than 12 months after the same became due. This was an unauthorized investment and constituted a breach of trust on the part of the executor. King v. Talbot, 40 N. Y. 76; Ormiston v. Olcott, 84 N. Y. 339; Matter of Cant, 5 Dem. Sur. 269; Bogart v. Van Velsor, 4 Edw. Ch. 718; King v. King & Sharpe, 3 Johns. Ch. 552; Matter of Myers, 131 N. Y. 409, 30 N. E. 135; Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; Lefever v. Hasbrouck, 2 Dem. Sur. 567.

It appears that the executor Burr made numerous loans of funds belonging to the estate of Henry A. Sheldon in the state of Nebraska, which said loans were secured by mortgages on farm property in that state. It further appears that the executor Burr has never been in the state of Nebraska, and that he has no personal knowledge of the value or location of any of the said several farms. These loans were made through the agency of R. C. Peters & Co., investment bankers of Omaha, Neb. Whenever a loan was to be made, there was submitted to the executor Burr an abstract of title covering the property offered as security for the loan, together with a copy of the application therefor. After examining these papers he would determine whether or not to make the loan. It appears from an examination of some of the papers on which loans were made by the said executor that in some instances the copy of the application for the loan, which set forth the amount and value of the property, the improvements thereon, its location, etc., was not, nor did it purport to have been, signed by the applicant, yet it was largely on the respective applications for loans that the executor based his knowledge as to the value of the property. As, for instance, Burr was asked this question:

"Q. In basing your knowledge as to the amount of money which was a safe investment on these various Nebraska mortgages, did you base that knowledge from the application received by you from R. C. Peters & Co.? A. Largely on the application."

Later he was asked, in reference to a particular loan he made, this question:

"Q. How did you know in this instance that this estimation in the appraiser's report was correct? A. I did not know only from the application, that is all."

Again, it appears from an examination of some of the abstracts covering the property on which loans were made that there were other mortgages covering the same property which were unsatisfied of record at the time the executor Burr made a loan on that property. I am unable to state, from an examination of some of the abstracts covering the property on which mortgages were given to secure loans, that the mortgage taken by the executor Burr in the case of a particular loan was the first mortgage and the only incumbrance on the property. There is evidence before me, however, which shows that some of the mortgages which appear to have been prior liens on the property were discharged and satisfied of record at a date subsequent to the recording of certain mortgages which were taken by the executor Burr on account of loans which he made. It does not appear that there was any necessity for making these loans in the state of Nebraska. On the other hand, in the case of each loan, it was a free and voluntary act on the part of the executor. In making these loans the executor did not exercise that degree of diligence and prudence which an executor or trustee is called upon to exercise in the placing of trust funds. In other words, each and every investment by the executor Burr of trust funds, belonging to the estate of Henry A. Sheldon, deceased, in the state of Nebraska, was unauthorized and illegal. Ormiston v. Olcott, 84 N. Y. 339; King v. Talbot, 40 N. Y. 76; Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753.

On December 12, 1902, the executrix, Scebelia H. Sheldon, presented a verified claim against the estate of Henry A. Sheldon to her coexecutor George M. Burr, which said claim amounted to $38,485.96, of which $17,370.41 was represented as principal and $21,115.55 was interest thereon. This claim consisted of various items, among which were the following: A demand note for $1,631, with interest, dated April 9, 1878; a demand note for $405.47, with interest, dated January 8, 1880; a duebill for $1,450, "without interest," dated March 15, 1872; a written acknowledgment of the receipt from Scebelia H. Sheldon of $2,825, dated February 1, 1875; a written acknowledgment of the receipt from Scebelia H. Sheldon of $2,229.32, dated April 12, 1878. These were all over the signature of H. A. Sheldon. The balance of the claim purports to have been a book account extending from July 1, 1878, to January, 1900. Nothing appears to have been paid on the note of $1,631 prior to the verification of the claim. There is an indorsement of $25 on the note of $405.47, which indorsement was made January 8, 1880. Nothing was paid on the duebill at the time of the verification of the claim, nor was anything paid on either the $2,825 claim or on the $2,229.32 claim down to the time of the verification of the claim. There is nothing before me which in any way shows the items which go to make up the book account. Upon this claim being presented by Scebelia H. Sheldon to her coexecutor, George M. Burr, the latter paid her the sum of $38,485.96, and took her receipt therefor, which bears date December 12, 1902.

Section 2719 of the Code of Civil Procedure, among other things, provides as follows:

"An executor or administrator shall not satisfy his own debt or claim out of the property of the deceased until proved to and allowed by the surrogate."

No proceedings were had with reference to the above claim, except as hereinbefore specified. Therefore the payment by the executor Burr was unwarranted and without authority. Ledyard v. Bull, 119 N. Y. 62, 72, 23 N. E. 444; Redf. Surr. (6th Ed.) § 641. It further appears that the greater portion, if not all, of the said claim was barred by the statute of limitations. Code Civ. Proc. § 382. This being true, it was the legal duty of the executor Burr to have opposed the payment of the same. McLaren v. McMartin, 36 N. Y. 88; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643; Hamlin v. Smith, 72 App. Div. 601, 76 N. Y. Supp. 258. In McLaren v. McMartin, supra, the court, in speaking of the duty of an administrator to pay the debts of a decedent, says:

"But in respect to demands barred at the death of the intestate the administrator is under no such obligation. The immunity of the estate is absolute. His position is purely fiduciary. It is his right and his duty to apply the funds in his hands to the satisfaction of all legal demands; but he has no retrospective authority to contract debts in the name of the intestate, or to revive those which were extinguished by law in his lifetime."

In the case of Butler v. Johnson, 111 N. Y. 212, 18 N. E. 643, the court says:

"An executor or administrator is bound to set up the bar of the statute, and he would not be allowed in his accounting any sum paid upon a debt which, at the time of its payment by him, was barred by such statute. As against an estate, therefore, a debt barred by the statute must be regarded as no debt. There is not only no moral obligation to pay it, but, on the contrary, there is a duty to set up the bar of the statute resting upon the executor or administrator."

It does not appear from the evidence that either Mrs. Van Slyke, Mrs. Burr, or Mrs. Wiggins had any knowledge of the presentation and payment of the claim until long after the same was paid. Therefore they could not, in the absence of any evidence to that effect, be deemed to have assented to the payment of the claim. As tending to show that Mrs. Wiggins gave her assent to the payment of the claim of Scebelia H. Sheldon, there was received in evidence, at the instance of the executor Burr, a letter which was marked "Exhibit J," which letter bears date March 12th. The year in which said letter was written does not appear upon the said letter, but from the evidence in the case it appears that the same was written no earlier than in the year 1904. There is nothing in this letter from which it can be said that Mrs. Wiggins knew of the claim which Mrs. Sheldon presented to the estate on December 12, 1902, or of the items which go to make up the same; nor is there anything in the case from which it can be said that Mrs. Wiggins ratified the action of the executor with reference to this claim. Adair v. Brimmer, 74 N. Y. 539. The court, in its opinion, at pages 553 and 554, says:

"To establish a ratification by a cestui que trust, the fact must not only be clearly proved, but it must be shown that the ratification was made with full knowledge of all the material particulars and circumstances, and also in a

case like the present that the cestui que trust was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Confirmation and ratification imply to legal minds knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it. The cestui que trust must therefore not only have been acquainted with the facts, but apprised of the law, how these facts would be dealt with by a court of equity. All that is implied in the act of ratification, when set up in equity by a trustee against his cestui que trust, must be proved, and will not be assumed. The maxim 'ignorantia legis excusat neminem' cannot be invoked in such a case. The cestui que trust must be shown to have been apprised of his legal rights."

Subsequent to the death of Scebelia H. Sheldon, and on April 4, 1904, the executor Burr presented to and caused to be filed in the Surrogate's Court of the county of Broome his petition and an account in the matter of the estate of Henry A. Sheldon, deceased, and asked that the said account be judicially settled. A citation was thereupon duly issued to all the parties interested in the said estate, including Mary E. Wiggins, the petitioner in this proceeding. Said citation was returnable on the 29th day of April, 1904, and the said Mary E. Wiggins was duly cited to attend a judicial settlement of the said account. Objections to the said account were duly filed by several of the persons interested therein, but the said Mary E. Wiggins did not personally appear at any time in the said proceedings, which were adjourned from time to time; but she did appear by S. C. Millard, Esq., on May 4, 1904, that being one of the times to which said proceeding was adjourned. At a later date, and on July 8, 1904, the objections which had been filed to the said account were withdrawn, and on July 26, 1904, a decree was filed and entered in the office of the surrogate of the county of Broome, judicially settling the said account. Never having been reversed, it must be regarded as conclusive evidence against the petitioner herein that the item of $38,485.96, allowed to the accounting party for money paid to Scebelia H. Sheldon in satisfaction of her claim as a creditor, is correct. Code Civ. Proc. § 2742; Altman v. Hofeller, 152 N. Y. 498, 46 N. E. 961.

Generally speaking, a trustee is not justified, in the absence of some authority in the instrument creating the trust, to the contrary, in continuing an investment formerly made by the testator which they would not be justified themselves in making. Perry, Trusts, §§ 454, 465. It is their duty to convert such stocks into money within a reasonable time after the creation of the trust. Perry, Trusts, §§ 454, 465; Adams v. Van Vleck, 4 Dem. Sur. 343; Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753; King v. Talbot, 40 N. Y. 76; Warren v. Union Bank of Rochester, 157 N. Y. 259, 51 N. E. 1036, 43 L. R. A. 256, 68 Am. St. Rep. 777. Among the assets belonging to the estate of Henry A. Sheldon at the time of his death were stocks in different banking institutions and stock in a manufacturing corporation. None of these stocks were sold, but the executors continued to hold them as investments. It does not appear that the executor Burr made any effort to sell any of these stocks; on the other hand, he considered them a good, safe investment. It does not appear, however, that the petitioner stated to the executor Burr on different occasions that she did not want any of the property (referring to both real and personal) sacrificed. It does not appear from the evidence that it would have been

necessary to have sacrificed any of these stocks in order to have effected a sale of the same. I am of the opinion and hold that it was the duty of the executor to have disposed of these stocks within a reasonable time after the death of Henry A. Sheldon. The evidence shows that in or about the month of October, 1904, a portion at least of the stocks and mortgages belonging to the estate of Henry A. Sheldon were divided between the petitioner herein and Isabel D. Burr, and that the said petitioner on October 25, 1904, executed an instrument acknowledging the receipt from George M. Burr, as executor of the estate of Henry A. Sheldon, deceased, of the stocks and securities just above referred to "as a partial payment in settlement of a portion of the personal estate of the said deceased." Having done this, the petitioner is now precluded in this proceeding from questioning any of these investments, except in so far as they relate to the acts and conduct of the said executor in the management of the said estate.

We have thus far considered some of the specific questions which have been raised in this proceeding. We will now pass to the question as to whether or not the executor should be removed. In determining this question it is the duty of the court to take into consideration all of the acts of the executor which in any way affect the trust which he has undertaken. While for some purposes the petitioner is estopped from questioning the payment to Scebelia H. Sheldon, and while she is precluded by her own act from calling upon the executor Burr to make good any loss which she may sustain by reason of her having accepted certain stocks and securities, which were mentioned in her receipt under date of October 25, 1904, yet his acts in relation to those matters should be considered by the court in determining the question now under consideration and are admissible for that purpose. While the evidence shows that no loss has thus far been occasioned by reason of any of the investments made by the executor, yet it cannot be said that this was due to diligence and prudence on the part of the executor, as the undisputed evidence shows that the loan to Louis Sands of Manistee, Mich., of $37,124.94 was in no way secured, and that his investments in the state of Nebraska (which he had no right to make) were not attended with that degree of care and foresight which the executor was called upon to exercise. As hereinbefore stated, the payment by the executor Burr of $38,485.96 to his coexecutor Scebelia H. Sheldon, was unwarranted and without authority, as the said claim was never legally established, and the greater portion, if not all of it, was barred by the statute of limitations. It further appears that the said claim was presented to the executor Burr on the 12th day of December, 1902, and paid by him on the same date. In this connection it is but proper to call attention to the fact that Scebelia H. Sheldon made a will on December 8, 1902, which will has since been admitted to probate, and by the terms of which George M. Burr is named as executor and as one of the three residuary legatees. It does not affirmatively appear that the said executor Burr knew of the making of this will at the time he paid the claim of Scebelia H. Sheldon, but it does appear that he knew of the provisions of the will and that he communicated the contents thereof to the petitioner herein some time during the latter part of December, 1902. It further appears that the exec-

utor Burr told the petitioner that it would not be necessary for her to appear in Surrogate's Court on the 8th day of July, 1904 (that being a time to which the accounting of George M. Burr, as surviving executor of the last will and testament of Henry A. Sheldon, deceased, had been adjourned), as he would look after her interests.

Without discussing the case more at length, and without having fully considered all of the points raised by the petitioner herein, I hold that facts have been established by the petitioner which bring this case within subdivision 2 of section 2685 of the Code of Civil Procedure, and that the petitioner is entitled to a decree revoking the letters testamentary heretofore issued to George M. Burr in the matter of the estate of Henry A. Sheldon, deceased. In reaching this conclusion I have not been unmindful of that rule of law which provides that "the power of removal of trustees appointed by deed or will ought to be exercised sparingly by the court." Elias v. Schweyer, 13 App. Div. 336, 340, 43 N. Y. Supp. 55; Matter of Seymour's Estate (Sup.) 17 N. Y. Supp. 91. It is insisted by the counsel for the executor that the latter should not be removed, because he acted in good faith in the matter of making investments and otherwise in the administration of the estate. I am obliged to view the matter in a different light, as it has been repeatedly held that:

"Good faith and honest intentions will not protect men in the performance of a trust, when they depart from prudential rules which the experience of others in similar transactions has approved as the only safe guides." Matter of Cant, 5 Dem. Sur. 269, 272; Bogart v. Van Velsor, 4 Edw. Ch. 718.

A decree may be made in accordance with the terms of this decision, the question of costs to be fixed at the time of the making of the decree.

Decreed accordingly.