THE PEOPLE *ex rel.* The First National Bank of Joliet, Petitioner, *vs.* JAMES J. BRADY, Auditor, Respondent.

*Opinion filed December 22, 1915.*

1. CONSTITUTIONAL LAW—*Congress cannot delegate power which is strictly legislative.* All strictly legislative power granted by the Federal constitution is vested in Congress and cannot be delegated by it to administrative or other officials.

2. SAME—*Congress may confer the power to determine whether law applies.* Congress may by general law confer upon other bodies the power of determining the application of a law to particular cases and of formulating rules for its exercise.

3. SAME—*section 11k of Federal Reserve act is not a delegation of legislative power.* Section 11k of the Federal Reserve act, which authorizes the Federal Reserve Board to grant, by special permit, to national banks applying therefor, when not in contravention of State or local laws, the right to act as trustees, executors or administrators, is not a delegation of legislative power to the Federal Reserve Board, as such section merely authorizes the board to determine whether a particular bank has complied with the Federal Reserve act.

4. SAME—*Federal Reserve Board acts as a mere agent of Congress.* Under section 11k of the Federal Reserve act the Federal Reserve Board is the mere agent of Congress to ascertain whether or not the exercise by a national bank of the power to act as trustee, executor or administrator is in contravention of State or local laws, and if it decides that the exercise of such power does not contravene State or local laws the ministerial duty of issuing a permit is imposed upon it.

5. SAME—*power of Congress to create banking corporations.* Congress has no express power to create banking corporations but its power to do so is implied under section 8 of article 1 of the Federal constitution, upon the ground that a banking corporation is a convenient, useful and essential instrument of the government in its fiscal operations and is a necessary and proper means of carrying into execution the powers granted to the government.

6. SAME—*Congress has no express or implied power to create corporation for sole purpose of acting as trustee.* Congress has no express or implied power to create a corporation for the sole purpose of acting as trustee, executor or administrator, and its power to authorize a national bank to engage in such business depends, therefore, upon the question whether such authority is reasonably

necessary to the efficiency of national banks, in order to carry out the purpose of their creation as governmental agencies.

7. SAME—*section 11k of the Federal Reserve act is unconstitutional.* Section 11k of the Federal Reserve act, which grants power to national banks to act as trustees, executors or administrators if such power is not in contravention of State or local laws, is unconstitutional, in that such power is not reasonably necessary to the efficiency of such banks as agencies of the government and concerns matters of private property rights which are subject to regulation by the States and not to the control of Congress.

8. BANKS—*permission to a national bank to act as trustee is in contravention of laws of Illinois.* Permission to a national bank to act as trustee, executor or administrator, as authorized by section 11k of the Federal Reserve act, is in contravention of the laws of the State of Illinois, which has dealt with the subject of trust companies under its exclusive power to regulate property within the limits of the State and control the mode of acquiring, transferring and distributing the same.

ORIGINAL petition for *mandamus.*

BARR, McNAUGHTON & BARR, for petitioner.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY, (LESTER H. STRAWN, of counsel,) for respondent.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The People of the State of Illinois, on the relation of the First National Bank of Joliet, by leave granted, filed in this court a petition for *mandamus* against respondent, James J. Brady, Auditor of Public Accounts of the State of Illinois. The petition sets up that the relator is a national banking association incorporated under and by virtue of an act of Congress entitled "An act to provide for national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," approved June 3, 1864, and acts amendatory thereof and supplementary thereto; that relator is a member bank of the Federal Reserve Bank of Chicago, organ-

ized under and by virtue of an act of Congress entitled "An act to provide for the establishment of Federal reserve banks, to furnish an elastic currency, to afford means of re-discounting commercial paper, to establish a more effective supervision of banking in the United States, and for other purposes," approved December 23, 1913; that the Federal Reserve Board created by said Federal Reserve act, pursuant to authority vested in said board by said act, upon the application of relator granted relator on April 7, 1915, a permit to act as trustee, executor, administrator or registrar of stocks and bonds; that upon the issuing of said permit relator applied to respondent for a certificate of authority to act under what is generally denominated the Trust act of the State of Illinois. The petition avers that at the time of making such application relator had performed all things required by it to be done by the provisions of the Illinois Trust act and the general Incorporation act of Illinois, and that respondent refused, and refuses, to issue relator such certificate of qualification. The petition prays that a peremptory writ of *mandamus* issue, directed to respondent, commanding him forthwith to issue to relator a certificate of qualification, as provided under the Trust act of Illinois.

Respondent demurred to the petition, assigning the following three reasons in justification of his refusal to issue the certificate of qualification: (1) That section 11$k$ of the Federal Reserve act is a delegation of legislative power by Congress to the Federal Reserve Board, in violation of the constitution of the United States, and is for that reason void; (2) if it be held that section 11$k$ is not a delegation of legislative power but a general grant by Congress to national banks of the power to act as trustees, executors, administrators or registrars of stocks and bonds, it is unconstitutional and void for want of power in Congress to grant such a franchise to a national corporation; (3) that to permit national banks to act as trustees, executors, ad-

ministrators or registrars of stocks and bonds in Illinois would be in contravention to the laws of Illinois.

*First*—Is section 11*k* of the Federal Reserve act an attempted delegation of legislative power to the Federal Reserve Board? If it is, the Federal Reserve act in this particular is unconstitutional, since section 1 of article 1 of the Federal constitution reads: "All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a senate and house of representatives." Section 11*k* of the Federal Reserve act reads: "The Federal Reserve Board shall be authorized and empowered * * * to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator or registrar of stocks and bonds, under such rules and regulations as said board may prescribe."

It will not be controverted that all strictly legislative power granted by the Federal constitution is vested in Congress and that all the powers which Congress may exercise are legislative. Congress cannot delegate powers strictly and exclusively legislative in their nature to administrative or other officials. On the other hand, Congress may by general law confer upon another branch of the government the duty, not of legislation but of execution, and the further duty of determining the application of legislation to particular cases and formulating rules for its exercise. As said by Chief Justice Marshall in *Wayman* v. *Southard,* 10 Wheat. 1, on pages 42 and 43: "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative, but Congress may certainly delegate to others, powers which the legislature might rightfully exercise itself."

Does the section of the Federal Reserve act set out attempt to delegate to the members of the Federal Reserve Board any legislative duties, and if so, what? On the other hand, does not the act rather authorize the Federal Reserve

Board to apply the provisions of the act to those banks which, upon application, are entitled to its provisions? A national bank, upon becoming a member bank of a Federal reserve bank, is by the provisions of section 11*k* entitled to a permit to act as trustee, etc., on application to the Federal Reserve Board, provided the grant of such permit would not be "in contravention of State or local law." In our opinion Congress, by the passage of the Federal Reserve act, purported to authorize such national banks as complied with its terms to act as trustees, executors, etc., and it was but left to the Federal Reserve Board to determine which national banks making application complied with and were entitled to the provisions of the act. The legislation granting the power was that of Congress; the decision as to what banks the legislation was applicable was delegated to the Federal Reserve Board.

The constitutionality of acts delegating administrative power to boards, commissions or individuals has often been before the courts and upheld. In *Field* v. *Clark*, 143 U. S. 649, the constitutionality of section 3 of the Tariff act of October 1, 1890, was involved, which act provided, "that with a view to secure reciprocal trade with countries producing the following articles, and for this purpose, on and after the first day of January, 1892, whenever and as often as the President shall be satisfied that the government of any country producing and exporting sugar, molasses, coffee, tea and hides, raw and uncured, or any of such articles, imposes duties or other exactions upon the agricultural or other products of the United States, which, in view of the free introduction of such sugar, molasses, coffee, tea and hides into the United States, he may deem to be reciprocally unequal and unreasonable, he shall have the power, and it shall be his duty, to suspend, by proclamation to that effect, the provisions of this act relating to the free introduction of such sugar," etc. The act was held constitutional, and Justice Harlan, speaking for the court, said:

"Legislative power was exercised when Congress declared that the suspension should take effect upon a named contingency. What the President was required to do was simply in execution of the act of Congress. It was not the making of law. He was the mere agent of the law-making department to ascertain and declare the event upon which its expressed will was to take effect." The Federal Reserve Board is the mere agent of the law-making department to ascertain and declare whether or not the exercise of trust powers by a national bank would be in contravention of State or local law, and having once decided the exercise of such trust functions by national banks did not contravene State or local laws, the board had then imposed upon it but the ministerial duty of issuing the permit.

In *United States* v. *Grimaud,* 220 U. S. 506, the constitutionality of an act of Congress was involved and it was contended there was an attempted delegation of legislative power. The Secretary of Agriculture was by act of Congress authorized to make provision for the protection of the public forests and reservations, promulgate rules, and the violation of the rules was made punishable as provided in the act. A prosecution was had for a violation of such rules and the constitutionality of the act was raised. The court said: "In the nature of things it was impracticable for Congress to provide general regulations for these various and varying details of management. Each reservation had its peculiar and special features, and in authorizing the Secretary of Agriculture to meet these local conditions Congress was merely conferring administrative functions upon an agent and not delegating to him legislative power."

In *Chicago, Burlington and Quincy Railroad Co.* v. *Jones,* 149 Ill. 361, the constitutionality of an act of the General Assembly of this State was upheld as not being an attempted delegation of legislative power. The act provided: "The railroad and warehouse commissioners are

hereby directed to make for each of the railroad corporations doing business in this State, as soon as practicable, a schedule of reasonable maximum rates of the charges for the transportation of passengers and freight," etc. As involving the same constitutional question, see *Stone* v. *Farmers' Loan and Trust Co.* 116 U. S. 307; *Georgia Railroad and Banking Co.* v. *Smith,* 128 id. 174; *Hopkins* v. *Levandowski,* 250 Ill. 372; *People* v. *Warden,* 144 N. Y. 529; *People* v. *Joyce,* 246 Ill. 124; *Hildreth* v. *Crawford,* 65 Iowa, 339; *People* v. *Brooks,* 101 Mich. 98; *People* v. *Roth,* 249 Ill. 532; *Arms* v. *Ayer,* 192 id. 601.

While it is difficult to define the line which separates legislative power to make laws from administrative authority to make regulations or apply the legislative provisions, we think in the act here involved no legislative power was attempted to be delegated to the Federal Reserve Board but the authority conferred upon it was purely administrative.

*Second*—It is a universally admitted principle that this government is one of enumerated powers, and article 10 of the amendments to the constitution declares: "The powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, it was said: "The government, then, of the United States can claim no powers which are not granted to it by the constitution, and the powers actually granted must be such as are expressly given, or given by necessary implication." The Federal constitution does not expressly authorize Congress to create corporations for banking or any other purpose. Section 8 of article 1 of the constitution authorizes Congress "to make all laws which shall be necessary and proper for carrying into execution the foregoing [enumerated] powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." Under this provision, only, may Congress, as a means to

a legitimate end, create corporations. Whether Congress had the power, under the constitution, to charter a national bank was the subject of consideration by the Supreme Court of the United States in *McCulloch* v. *State of Maryland,* 4 Wheat. 316. In that case the right of Congress to create any corporation was denied. The opinion was by Chief Justice Marshall. The court recognized that this right was not one of the express powers granted by the constitution, but said the powers given to the government implied the appropriate means of execution. It was held a bank was a convenient, useful and essential instrument of the government in its fiscal operations, and upon this ground it was held Congress had the implied power to create the corporation. It was said: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consist with the letter and spirit of the constitution, are constitutional." In *Osborn* v. *United States Bank,* 9 Wheat. 738, the court was asked to reconsider the *McCulloch case.* The *Osborn case* involved the validity of a State law imposing a tax on the Bank of the United States doing business in the State without being permitted to do so by the laws of the State. It was sought to sustain the State law on the ground that the corporation was created for the management of an individual concern, founded upon contract between individuals and having private trade and profit for its principal object. The opinion was by Chief Justice Marshall, and, reviewing the *McCulloch case,* it was said the whole opinion of the court in that case was founded on and sustained by the idea that the bank was "necessary and proper for carrying into effect the powers vested in the government of the United States." The court adhered to the decision in the *McCulloch case* as to the power of Congress to charter a bank and refused to modify that case because the bank was carrying on a private business. The court said it could not be that so much of

the act as incorporated the bank was constitutional but
that so much of it as authorized its banking operations was
unconstitutional; that the bank was a necessary and proper
instrument for carrying on the fiscal operations of the gov-
ernment; that unless it be endowed with the faculty of
lending and dealing in money it could not effect the object
of its creation, and that to destroy its chartered power to
lend and deal in money would destroy the corporation. In
*United States* v. *Harris,* 106 U. S. 629, the court quoted
with approval from Story on the Constitution: "When-
ever, therefore, a question arises concerning the constitu-
tionality of a particular power, the first question is whether
the power be expressed in the constitution. If it be, the
question is decided. If it be not expressed, the next in-
quiry must be whether it is properly an incident to an ex-
press power and necessary to its execution. If it be, then
it may be exercised by Congress; if not, Congress cannot
exercise it."

When the National Bank act of 1864 was before the
Supreme Court of the United States the doctrine of the
*McCulloch* and *Osborn cases* was approved, for the reason
that national banks were in the nature of governmental
agencies in carrying out governmental functions, and it was
held a State could exercise no control over them in the dis-
charge of their private functions. *Farmers' and Mechan-
ics' Nat. Bank* v. *Deering,* 91 U. S. 29.

The basis upon which the authorities rest that Congress
has power to create a banking corporation and authorize it
to carry on a general banking business is, that such institu-
tions are necessary and appropriate agencies for the carry-
ing out of certain governmental functions, and while they
are authorized to engage in a general banking business,
(U. S. Rev. Stat. sec. 5136,) such authority is necessary to
their continued existence and the exercise of such power is
necessary to enable the corporations to serve the purpose of
their creation. The power to create them was never sus-

tained on the ground that Congress had the right to charter
a corporation for the purpose, alone, of engaging in the
private trade of banking, but the power of such corporation
to engage in such trade or business was sustained as neces-
sary to perpetuate the life of the corporation created as an
instrument or agent for carrying out the objects and pur-
poses of the government. We come, then, to the inquiry
whether Congress has the power to authorize a banking cor-
poration created by it, to engage in the business of acting
as trustee, executor of wills, administrator of estates or reg-
istrar of stocks and bonds. If such power exists it must
be either because Congress has the power to create a cor-
poration for that purpose, or because the possession of such
authority by corporations Congress has the power to create
is necessary to the continued existence of the corporations.
It will not be contended Congress has power to create cor-
porations for the sole purpose of acting as trustees, execu-
tors or administrators, and it has not attempted to do so.
Such corporations could not be made the instrumentalities
for carrying out governmental functions. The business of
such corporations appertains to private property rights un-
der the laws of the several States, their devolution, descent
and distribution. These are subjects of regulation by the
States and not subject to the control of Congress. (*United
States* v. *Fox,* 94 U. S. 315; *Pennoyer* v. *Neff,* 95 id. 714;
*Brown* v. *Fletcher's Estate,* 210 id. 82; *Yonley* v. *Laven-
der,* 88 id. 276; *Security Trust Co.* v. *Black River Nat.
Bank,* 187 id. 211.) Trust companies or corporations or-
ganized for the purpose of acting in trust capacities are
very different from banking corporations. In some of the
States a corporation may be authorized to do a banking
business and also to act as trustee, executor or administra-
tor, but the two functions, when exercised by the same cor-
poration, are kept separate and apart. In some States banks
do not exercise the powers of trust companies, and in others
trust companies do not exercise banking functions. Since

Congress has no express or implied power to create trust companies to act as trustees, executors or administrators, the nature and character of their business making them the creatures of the various States, Congress could only vest national banking corporations with such powers if they were reasonably necessary to the efficiency of such corporations for the purposes of their creation as governmental agencies. If Congress had deemed the exercise of trust powers by national banks necessary to the accomplishment of the governmental purposes for which they were created it would seem such power would have been granted expressly to all national banks, as was the power to exercise certain banking functions granted by section 5136 of the Federal statutes. The right of a national bank to act as trustee, etc., as conferred by the Federal Reserve act, was made elective with the bank. This feature of the act would preclude the conclusion that Congress deemed it necessary, on any ground, that national banks possess the power to act as trustees, executors, administrators or registrars of stocks and bonds. If it had, it is evident it would not have made the act elective and permissive. National banks without the power to act as trustees, etc., have efficiently served the governmental purposes for which they were primarily created, and it not being shown such added powers are now necessary to the further success of such purposes, and we being of the opinion the powers attempted to be conferred by Congress belong strictly to the States, we think the act, in so far as it attempted to confer such powers upon national banks, is unconstitutional and void.

*Third*—The General Assembly of Illinois, in adopting the State Bank act, the Trust act and the general Incorporation act, was exercising powers belonging to the State. Banking corporations may qualify under the Trust act to accept and execute trusts, and corporations may be organized under the general Incorporation act for that purpose. Section 26 of the general Incorporation act provides that

foreign corporations doing business in this State shall be subject to the liabilities, restrictions and duties imposed upon corporations of like character organized under the laws of this State, and they can have no other or greater powers. It may well be doubted whether a corporation created by act of Congress for a national governmental purpose, considered either as a foreign or domestic corporation, could be construed to be within the meaning of the State statute; but however that may be, we are of the opinion permission to a national bank to act as trustee, executor or administrator is in contravention of the State law, and such permission is authorized by the Federal Reserve act only "when not in contravention of State or local law." While not expressly so stated, we understand the position of relator, in effect, to be, that if the State is excluded from the exercise of all visitorial and regulatory powers, permission to a national bank to engage in the execution of trust powers would be in contravention of the State law, but it is contended that the exercise of the State authority over such corporations is not excluded. No such authority to the State is recognized either by the act of Congress or the Federal Reserve Board. The rules adopted by the board require the trust department of a bank granted permission to execute trusts to be a separate department, under the management of officers whose duties shall be prescribed by the officers of the bank. The funds, securities and investments are required to be held separate and distinct from the funds and securities of the bank, and one from another. Rule 4 requires examiners appointed by the comptroller of the currency or designated by the Federal Reserve Board to make thorough and complete audits of the cash, securities, accounts and investments of the trust department at the same time examination is made of the banking department. The board reserves the right to revoke permits where in its opinion a bank has willfully violated the regulations of the board or the laws of the State. If, as claimed by relator, national

banks will consent to an examination by the State of their trust department, that would not alter the situation from a legal point of view. A mere examination by permission, and without any authority to take any action if action be found advisable, would be a farce. Large powers in the control and regulation of corporations authorized by the Illinois statute to administer trusts are given the State. In addition to other important powers conferred on the Auditor of Public Accounts, he is required, personally or by competent persons appointed by him, to annually examine such corporations, and may do so oftener if in his judgment it is necessary. He may cause proceedings to be instituted for violations of law, may direct the discontinuance of any unsafe or illegal investment, and may revoke the certificate of authority to do business. As a mere business proposition it would seem impracticable and inconsistent to attempt to subject the corporation to the control or regulation of the State and Federal authorities at the same time. They might disagree whether the department was being properly conducted and whether its powers were being properly executed. It is easily possible, and we think highly probable, that there would be conflicts of authority between the State and Federal authorities, and in that event, which is to control? If both are to have equal authority, how are their differences to be settled? And 'if one has paramount authority, why say the corporation is subject to regulation and control of both? We think the question has been settled against the right of the State to regulate or control any department of a national bank, even if it were conceded Congress had the power to confer upon it the authority to act as trustee, executor or administrator. In *Farmers' Nat. Bank* v. *Deering, supra, Davis* v. *Elmira Savings Bank,* 161 U. S. 275, *Easten* v. *Iowa,* 188 id. 220, and many other cases, it has been held that national banks are instrumentalities ·of the Federal government in carrying out its governmental powers, and in the conduct of their affairs are

not subject to the authority and control of States in conflict with the laws of the United States; that Congress is the judge of the extent of powers to be conferred upon such banks and has the sole authority to regulate and control the exercise of their operations, and the States have no authority, whether with hostile or friendly intentions, to interfere with national banks or their officers in the exercise of the powers bestowed upon them by the general government. We have before attempted to point out that the power to act as trustee, executor or administrator was not necessary to be conferred upon national banks to enable them to serve the purpose for which they were created nor necessary to the vitality or continued existence of the corporations. We are furthermore of opinion that those are subjects exclusively within the jurisdiction of the State. Certain powers of government belong exclusively to the States and certain powers exclusively to the national government. The power to regulate property within the limits of the State, the modes of acquiring and transferring it and the rules of descent and distribution of property are subjects belonging exclusively to the jurisdiction of the State. (*United States* v. *Fox, supra; Pennoyer* v. *Neff, supra; Overley* v. *Gordon,* 177 U. S. 214; *Yonley* v. *Lavender, supra.*) Trustees, executors and administrators deal with private property. They are the instrumentalities through which estates are settled and the transfer of property effected, and through which private property is protected and guarded for the purpose of applying it to the uses for which it was intended. They are not subjects over which the Federal government has been given control, and any attempt to exercise such control would be "in contravention of State or local law," which is forbidden by section 11*k* of the Federal Reserve act and would also be in violation of the constitution.

The demurrer to the petition is sustained and the writ denied.                                    *Writ denied.*