ATTORNEY GENERAL, ex rel. UNION TRUST CO., v. FIRST NATIONAL BANK OF BAY CITY.[1]

1. BANKS AND BANKING—NATIONAL BANKS—TRUSTS—QUO WARRANTO—POWER TO ACT AS FIDUCIARY.

The courts of Michigan have jurisdiction to inquire by quo warranto whether a corporation organized under the banking laws of the United States is lawfully engaged in exercising any or all of its franchises within the borders of the State or to enjoin the enjoyment of such franchises, if they are not legally exercised.

---

[1]Reversed on writ of error to Supreme Court of the United States June 11, 1917.

2. SAME—CONSTITUTIONAL LAW—TRUSTS—EXECUTOR.

While the final determination as to the constitutionality of acts of Congress rests with the United States Supreme Court, the assumption by a national bank of the franchise to do business as trustee, executor, or other fiduciary agent under the authority of the Federal reserve act (38 U. S. Stat. 262, U. S. Comp. Stat. 1913, § 9794 [*k*]) may be questioned in proceedings by the attorney general on relation of a party in interest.

3. SAME—CORPORATIONS—TRUSTS.

The legislature having power to create corporations with authority to manage and execute trusts, estates of decedents, etc., and having provided for domestic corporations to transact such business, foreign corporations with powers of a like character may be admitted to do such business in Michigan. In acting in the capacity of trustee, executor, or administrator, the laws of the State in which it is engaged in business control.

4. SAME—FOREIGN CORPORATIONS.

National banks, which are not foreign corporations, are agencies of the Federal government domesticated in the State and may sue and be sued in the courts of the State, but their powers, management and control are not within the State authority, except that a national bank is limited to the powers and authority made lawful by the statutes of the State in which it is doing business and cannot act in contravention of the same.

5. SAME—PUBLIC POLICY.

There is no State policy opposed to corporate trustees, executors or administrators.

6. SAME—FEDERAL STATUTE.

No State law is contravened by the act of Congress creating national banks.

7. SAME—CONSTITUTIONAL LAW—ADMINISTERING ESTATES.

National banks under 38 U. S. Stat. 262, U. S. Comp. Stat. 1913, § 9794 (*k*), providing that power may be granted by the reserve board by special permit to national banks applying therefor, unless in contravention of the local statutes, to act as trustee, executor, etc., cannot be authorized to perform the duties of administering trusts, etc.,

192 Mich.—41.

described, which do not necessarily connect with its business of lending money and accepting deposits. The attempted legislation invades the sovereignty of the States in which the control of devolution of property and conducting private business within the State is placed.

*Quo warranto* proceedings by Grant Fellows, Attorney General, on the relation of the Union Trust Company and others, against the First National Bank of Bay City, questioning the right of respondent to act as trustee, executor, administrator, or registrar of stocks and bonds under the Federal reserve act. Submitted January 20, 1916. (Docket No. 134.) Judgment for relator September 26, 1916.

*Grant Fellows,* Attorney General, *Henry M. Campbell* and *John G. Johnson* (*Sidney T. Miller,* of counsel), for relators.

*Gillett & Clark,* for respondent.

*Milton C. Elliott* and *Joseph P. Cotton, amici curiæ.*

BROOKE, J. The attorney general of the State, upon the relation of five trust companies, organized and doing business under the laws of the State, by permission granted, filed in this court an information in the nature of a proceeding *quo warranto* against the First National Bank of Bay City, by means of which relators question the right of the respondent to act as trustee, executor, administrator, and registrar of stocks and bonds under such rules and regulations as the Federal reserve board may prescribe; it being claimed that the exercise by respondent of said franchises and privileges is in contempt of the people of the State of Michigan and to their great damage and prejudice.

To the information so filed respondent interposed a plea setting out that it is a duly organized and char-

tered banking association incorporated under the national bank act approved June 3, 1864, and the amendments thereto. Further answering, respondent says that under and by virtue of an act of Congress commonly known as the Federal reserve act, approved December 23, 1913 (38 U. S. Stat. 251), entitled—

"An act to provide for the establishment of Federal reserve banks, to furnish an elastic currency, to afford means of rediscounting commercial paper, to establish a more effective supervision of banking in the United States, and for other purposes"—

it filed its application to become a member bank, and thereafter subscribed for and paid for its proportion of stock in the Federal reserve bank, whereupon it then became and now is a member bank of said Federal reserve bank, district 7; further, that thereafter, on the 13th day of April, 1915, on application made therefor, the said Federal reserve board granted to said respondent the right to act as trustee, executor, administrator, and registrar of stocks and bonds, and that by virtue of such permit respondent is now acting as trustee for bondholders, and is named as mortgagee and trustee in a certain real estate mortgage given to secure to said bondholders the payment of the bonds mentioned in said mortgage and interest thereon; further, that respondent is advised that such grant and permit are not in contravention of any State or local law in Michigan, and that there is no public grievance to be remedied by this proceeding, but that the writ is prosecuted solely for the private benefit of the relators and other trust companies that may be hereafter organized in the State.

To this plea the attorney general demurred upon the following grounds:

"(1) Because section 11 (*k*) of the Federal reserve act, in pursuance of which the Federal reserve board has attempted to confer upon the respondent the

right to act as trustee, executor, administrator, and registrar of stocks and bonds, under such rules and regulations as said board may prescribe, is unconstitutional and void, in that Congress is not authorized by the Constitution of the United States to confer upon national banks the corporate powers specified in said section.

"(2) Because, even if Congress itself possessed the authority to confer upon national banks the corporate powers specified in said section 11 (*k*), it cannot lawfully delegate such authority to the Federal reserve board.

"(3) Because the granting of the corporate powers specified in said section 11 (*k*) by the Federal reserve board to the respondent is in contravention of the laws and policy of this State."

The question presented arises under section 11 of the so-called Federal reserve act, which, among other things, provides:

"The Federal reserve board shall be authorized and empowered:  *  *  *

"(*k*) To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe." U. S. Comp. Stat. 1913, § 9794 (*k*) (38 U. S. Stat. 262).

The first proposition raised by counsel for respondent is that the courts of this State are without jurisdiction to oust a corporation organized under the laws of the United States, or to enjoin such corporation from enjoying any or all of its franchises within the borders of the State. Although the question is not raised by the pleadings, we think it should be determined adversely to the contention of counsel for the Federal reserve board, who, by leave of the court, were permitted to file a brief and make an argument in the case. No one would contend that final determination

as to the validity of an act of Congress does not rest with the Federal Supreme Court, but it is, we think, equally clear that any State may by *quo warranto* inquire by what authority any corporation exercises corporate rights within its borders. In the case of *Attorney General* v. *Booth & Co.,* 143 Mich. 89 (106 N. W. 868), this court said:

"But proceedings in the nature of *quo warranto* are appropriate to try the right of a domestic corporation to act as such, and there would seem to be a close analogy between such a case and one where the proceeding is resorted to for the purpose of inquiry into the right of a foreign corporation to do business in another State than that of its organization, as it would be in the home State if the object was to inquire into a right to exercise franchises in excess of those granted"—citing cases.

See, also, *Mason* v. *Perkins,* 73 Mich. 303 (41 N. W. 426); *People* v. *Manhattan Co.,* 9 Wend. (N. Y.) 351; 32 Cyc. p. 1426, and cases cited in note 1.

The legality of the incorporation of the respondent is not questioned by the proceeding. The inquiry is instituted for the purpose of ascertaining whether its assumption of a franchise to do business of a certain character is with or without legal warrant; that business being apparently not incidental to banking, and peculiarly under the control of State laws. Counsel for relators present the question under three heads as follows:

"(1) Congress is not authorized by the Constitution to confer upon national banks the corporate powers specified in section 11 (*k*).

"(2) Section 11 (*k*) is void because Congress cannot delegate to the Federal reserve board the authority attempted to be conferred by this section.

"(3) The granting of authority to the respondent to act as trustee, executor, administrator, and registrar of stocks and bonds is in contravention of the laws and policy of this State."

In view of our conclusions hereinafter stated with reference to the third point raised, we find it unnecessary to give any consideration to points numbered 1 and 2. An extended discussion of these questions will be found in the recent case of *People* v. *Brady*, 271 Ill. 100 (110 N. E. 864).

Assuming, then, for the purposes of this case, that Congress might constitutionally enact the legislation in question, it will be noted that under subsection (*k*) of section 11, the Federal reserve board is authorized to grant permission to national banks to act as trustees, etc., only when the exercise of such franchises by them is "not in contravention of State or local law."

It is vigorously asserted on behalf of relators that such authorization to the national banks of this State is in contravention of State law.

On the other hand, counsel for respondent state their position upon this point as follows:

"(*a*) There is nothing in the State law specifically prohibiting any person or corporation from acting as trustee, executor, registrar, etc.

"(*b*) In the absence of specific prohibition, the powers of a natural person to act in these capacities are unlimited, and the powers of a corporation are limited merely by the statute under which it is organized.

"(*c*) If national banks were organized under State laws, it might be argued that an express prohibition was not required, but that the mere absence of a State enabling act would be sufficient to limit their powers.

"(*d*) Inasmuch as national banks are organized under the acts of Congress, no State enabling act is necessary to enable them to carry on a trust company business any more than to enable them to carry on a banking business. Their authority is found in section 11 (*k*), and if this section is constitutional, its operation can be suspended only by a prohibitory statute of the State, and not merely by the lack of an enabling State statute.

"(*e*) The authority given by section 11 (*k*) does not compel the appointment of national banks as fidu-

ciaries in any case, but merely permits such appointment. The probate court or other appointing authority still has full freedom of choice. A mere enlargement of such field of choice contravenes no law of the State.

"(*f*) All references to State 'policy' are beside the point. The State legislature has had at least one regular session since the passage of the Federal reserve act, and has not seen fit to prohibit national banks from qualifying as fiduciaries under section 11 (*k*). Its omission to do so is more significant than the claimed existence of a State policy, which is, at best, doubtful, vague, and indefinite. The courts should require the State to express itself positively and definitely on a question of such importance."

Whether the subjects mentioned in section 11 (*k*) are subjects over which the State has exclusive jurisdiction, or whether they or some of them may properly be subject to Federal legislation, it is not necessary to determine. As to estates of decedents, however, see *Dickinson* v. *Seaver,* 44 Mich. 624 (7 N. W. 182) ; *Lafferty* v. *Bank,* 76 Mich. 35 (43 N. W. 34) ; *American Missionary Ass'n* v. *Hall,* 138 Mich. 247 (101 N. W. 535).

The real point in issue in this proceeding is whether the exercise by national banks of the powers of trustees, executors, administrators, etc., is in contravention of local law.

An examination of our statutes clearly shows that the State has legislated very fully with reference to each of the subjects mentioned in section 11 (*k*). Chapter 285, 4 How. Stat. (2d Ed.) § 10669 *et seq.* (3 Comp. Laws 1915, § 11565 *et seq.*) is devoted to the subjects of trusts, and therein provision is made for their definition, regulation, and administration. Chapters 290 to 301, 4 How. Stat. (2d Ed.) § 10959 *et seq.* (3 Comp. Laws 1915, § 11795 *et seq.*) are devoted to laws relative to the settlement of estates of deceased persons. The administration of testate estates is by the law

of this State committed to the *person* named as executor therein, if he is legally competent. 4 How. Stat. (2d Ed.) § 11026 (3 Comp. Laws 1915, § 13807). In the case of intestate estates "to some one or more of the *persons* hereinafter mentioned." 4 How. Stat. (2d Ed.) § 11040 (3 Comp. Laws 1915, § 13820).

While the word "person" is not defined in the stattues cited, to read them is to be convinced that the term was used in a restricted sense, and was meant to apply to natural persons only and not to corporations. In reaching this conclusion we are not unmindful of the rule of construction (1 How. Stat. [2d Ed.] § 2, subsec. 12 [1 Comp. Laws 1915, § 64]) which provides:

"The word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals."

Our determination as to the meaning of the word "person" as employed in these statutes is in harmony with the decision in *Grunow* v. *Simonitsch*, 21 N. D. 277 (130 N. W. 835), where, in construing a similar statute, the court said:

"It is perfectly apparent to our minds that until the enactment of section 4682, the legislature had in the most explicit manner expressed its intention to restrict such appointments to natural persons. By the enactment of section 4682 it is equally apparent that the only change which the legislature intended to make in the existing statute was to permit domestic annuity, safe deposit, and trust companies to receive such appointments."

See, also, *In re Avery's Estate*, 45 Misc. Rep. 529 (92 N. Y. Supp. 974).

In the year 1889 the law relative to the administration of estates of decedents, and the execution of trusts was changed by enactment. 3 How. Stat. (2d Ed.) chap. 104, §§ 6476-6510 (2 Comp. Laws 1915, § 8044 *et seq.*). Except as authorized under said act, no cor-

poration in Michigan is empowered to administer trusts or to act as executor or administrator. A corporation may exercise only those powers conferred upon it by its charter under the law of its organization. In authorizing certain corporations organized under the act in question to execute trusts and administer estates, the legislature imposed very stringent conditions. It fixed a minimum capitalization, required the investment of a certain percentage of the capital in specified securities, and compelled the making of a fixed deposit with the State treasurer for the purpose of securing depositors and creditors; it fixed the number and qualifications of directors and imposed penalties for fraud and embezzlement; it regulated investments of the corporation, and provided for complete supervision by the State banking department. Many of the regulations imposed could not be complied with by a national bank.

We cannot agree with the contention of counsel for respondent that relators must point to a specific prohibitory law—a law absolutely forbidding national banks to engage in the activities specified in section 11 (*k*). We believe that the legislature, in the enactment of the so-called trust, deposit, and security statute, and clothing corporations organized thereunder with the powers therein defined, by unavoidable inference excluded all other corporations within the State from the exercise of those powers. Nor do we believe, as claimed by counsel for respondent, that the exercise of such powers by national banks is, at most, contrary only to the *public policy* of the State. Our legislation upon the subjects involved in section 11 (*k*) is so particular and so voluminous, and the legislative purpose so apparent, that we have no hesitation in reaching the conclusion that the exercise of the powers enumerated in section 11 (*k*) by national banks would be "in contravention of State law." While the decision

in *People* v. *Brady, supra,* on this point is to the same effect, it is, of course, not controlling, because the court of Illinois dealt with the statutes of that State, which differ materially from our own. The same may be said of the decision in *Appeal of Woodbury* (N. H.), 96 Atl. 299, which arose in the State of New Hampshire.

It is, we think, clear that in the enactment of the trust legislation adverted to the State sought to surround the execution of trusts and the administration of estates by corporations with certain safeguards which would be wholly lost if national banks within the State were permitted to exercise the functions enumerated under section 11 (*k*).

We are, therefore, of opinion that the prayer of the relators should be granted, and that the respondent be enjoined and excluded from acting as trustee, executor, administrator, and registrar of stocks and bonds. No costs will be allowed.

Ostrander, J. (*concurring*). If at any time in this State only individuals could execute trusts, manage trust funds, and act as executors and administrators of estates of deceased persons, it was because there had been created no corporation with the proper powers. It was within the power of the legislature to create, or provide for creating, such corporations, and, as the idea of corporate usefulness and efficiency became general, the legislature did provide for creating corporations with the necessary powers. Having provided for the creation of such domestic corporations, foreign corporations, having proper powers, may, upon such reasonable conditions as the legislature may prescribe, be admitted to do in this State what domestic corporations may do.

There is therefor no State policy opposed to corporate trustees, executors, or administrators. No corpo-

ration, and for that matter no individual, can in any event act in any of the capacities indicated except by appointment. And a corporation or an individual in such relations is governed by the laws of the State and the orders of State courts.

National banks are, and are not, foreign corporations. They are creatures of Congress, agencies of the Federal government, domesticated in the State. They may sue and be sued in the courts of the State, but the powers they shall possess, their management and control are beyond State authority, except that a bank like the respondent may not exercise certain powers —cannot lawfully possess them—in contravention of State law.

No State law is contravened—opposed, come into conflict with—because a corporation exercises the indicated powers, nor by the act of Congress creating national banks. The legislature has not declared that national banks in this State shall not have the right "to act as trustee, executor, administrator, or registrar of stocks and bonds." U. S. Comp. Stat. 1913, § 9794 (*k*) (38 U. S. Stat. 262). And I do not find in Brother BROOKE'S opinion reference to any State law that will be contravened if respondent continues to act in the indicated capacities. To say that because the legislature has required certain things of a domestic corporation as a condition to the exercise of the right, and cannot require the same or similar things from national banks, therefore the exercise of the right by national banks will be in contravention of State law, seems to me to be an unsound argument. The bank is here with such structure as Congress has given it, and Congress has in terms declared that, among other functions, it may perform that of a trustee, etc., if anybody wants it to. The mere element of safety of a fund is a matter to be considered by those applying to the corporation to take charge

of it, or by the court making an appointment. That one may regard the domestic corporation as the safer institution is not evidence that the other, if it acts, acts in contravention of State law. *Certain* safeguards surrounding the execution of trusts, etc., by domestic corporations are lost when individuals are appointed to execute them. The individual does not *therefore* act in contravention of State law.

Mr. Justice BROOKE does not point out in what way, if respondent acts within its apparent powers, the operation of any State law governing trusts, or the settlement of estates, will be interfered with. I am not content to rest so important a decision upon a doubtful inference. We must come, I think, to the question: Has respondent the power which the court is informed it is exercising? The question is a delicate one, less so, I think, because of the decisions of the Federal court. The power of Congress to create national banks is sustained upon the theory that a bank, to the government,

"is a convenient, a useful, and essential instrument in the prosecution of its fiscal operations." *M'Culloch* v. *State of Maryland*, 4 Wheat. 316.

"The bank is not considered as a private corporation, whose principal object is individual trade and individual profit, but as a public corporation, created for public and national purposes. That the mere business of banking is, in its own nature, a private business, and may be carried on by individuals or companies having no political connection with the government, is admitted; but the bank is not such an individual or company. It was not created for its own sake, or for private purposes. It has never been supposed that Congress could create such a corporation. * * * Why is it, that Congress can incorporate or create a bank? This question was answered in the case of *M'Culloch* v. *State of Maryland*. It is an instrument which is 'necessary and proper' for carrying on the fiscal operations of government. Can this instrument, on any rational calculation, effect its object, unless it

be endowed with that faculty of lending and dealing in money, which is conferred by its. charter? If it can, if it be as competent for the purposes of the government without as with this faculty, there will be much difficulty in sustaining that essential part of the charter. If it cannot, then this faculty is necessary to the legitimate operations of government, and was constitutionally and rightfully ingrafted on the institution. * * * The operations of the bank are believed not only to yield the compensation for its services to the government, but to be essential to the performance of those services. Those operations give its value to the currency in which all the transactions of the government are conducted. They are, therefore, inseparably connected with those transactions. They enable the bank to render those services to the nation for which it was created, and are, therefore, of the very essence of its character, as national instruments. The business of the bank constitutes its capacity to perform its functions as a machine for the money transactions of the government. Its corporate character is merely an incident, which enables it to transact that business more beneficially." *Osborn* v. *Bank,* 9 Wheat. 738.

See, also, *Farmers', etc., Bank* v. *Dearing,* 91 U. S. 29.

Undoubtedly all presumptions are in favor of the constitutionality of the act in question here, and Congress is the judge, within the exercise of its powers, of the functions a national bank should perform. But in the reasoning of the judges, in the opinions to which I have referred, I find, I think, a conclusive argument supporting the proposition that Congress has exceeded its constitutional powers in granting to banks the right to act as trustees, executors, and administrators. If for mere profit it can clothe this agency with the powers enumerated, it can give it the rights of a trading corporation, or a transportation company, or both. There is, as Judge Marshall points out, a natural connection between the business of banking and the carry-

ing on of Federal fiscal operations. There is none apparently between such operations and the business of settling estates or acting as a trustee of bondholders. This being so, there is in the legislation a direct invasion of the sovereignty of the State which controls not only the devolution of estates of deceased persons and the conducting of private business within the State, but as well the creation of corporations and the qualifications and duties of such as may engage in the business of acting as trustees, executors, and administrators. Such an invasion I think the court may declare and may prevent by its order operating upon the offending agency.

I concur, therefore, in the conclusion arrived at by Mr. Justice BROOKE.

STONE, C. J., and KUHN, BIRD, STEERE, and PERSON, JJ., concurred with OSTRANDER, J.

MOORE, J. I think the writ ought to be granted for the last reason stated by Justice OSTRANDER.